GRAHAM *v.* STATE OF INDIANA.

[No. 1267S150. Filed February 26, 1970.]

*William C. Erbecker, James Manahan*, Indianapolis, for appellant.

*John J. Dillon*, Attorney General, *Richard V. Bennett*, Deputy Attorney General, for appellee.

HUNTER, C.J.—Appellant, Anthony Graham, was charged by indictment in two counts with possession and sale of heroin, a narcotic drug in violation of the 1935 Indiana Narcotic Act, as amended [§§ 10-3520, 10-3538]. Trial was had to the court in the Marion County Criminal Court, Division Two, and appellant was found not guilty as to count one relating to the sale of narcotics and guilty as to count two relating to the possession of same. Upon the timely filing of his motion for new trial, and the overruling thereof by the trial court appellant brings this appeal contending that (1) the finding of the court is not sustained by sufficient evidence, and (2) that the finding of the court is contrary to law.*

The arguments set forth in the memorandum accompanying appellant's motion for new trial may be summarized as follows: (a) there is insufficient evidence to support the conviction of possession of narcotics, to-wit: heroin, because there was at least one unexplained break in the chain of custody of the seized narcotic which break precluded a finding that the white powder substance allegedly received by a "buyer" from appellant was in fact the same white powder found to contain heroin in the police laboratory. (b) The finding of the trial court was contrary to law because there is no existing law of the State of Indiana regulating the possession and/or sale of heroin, one of the two such laws having been repealed by the 1963 Indiana General Assembly and the other such law having

---

* This appeal was assigned to this office on January 30, 1970.

been abrogated by presidential decree on June 12, 1967. (c) The finding of the trial court was contrary to law in that it was reached in a manner contrary to the principles of law as applied to the facts and issues in the case.

Because of the holding we reach herein, our discussion of appellant's assignment of errors will be directed to arguments (a) and (b) only. A brief recitation of the facts revealed by the record follows.

On November 22, 1966, Sergeant William Owen of the Indianapolis Police Department met one Willie B. Williams, a known narcotics user, at 2:00 P.M. just west of Senate and Walnut Streets in Indianapolis. After a brief conversation between the two men, Williams made a telephone call to the appellant which phone conversation Officer Owen was able to hear. Owen testified that he heard Williams ask the person on the other end of the line if he had any heroin and the reply was "yes." After the phone conversation Officer Owen and Williams, along with a Lieutenant Jones and Sergeant Dora Ward of the Indianapolis Police Department Narcotics Squad, got into a panel truck and drove to the vicinity of the 2300 block of Parker Avenue.

Upon their arrival there, the officers searched Williams and then gave him a ten dollar bill which was intended to be used for the purchase of narcotics. Williams then got out of the truck and walked north on Parker Avenue.

At or about 3:00 P.M., the accompanying officers observed Williams entering the drugstore as planned at the corner of 23rd and Dearborn Street. Shortly before Williams went in, the officers had observed two men arrive at that location in a black Chevrolet. The two men, recognized by the officers as appellant and one Charles Hardister, entered the drugstore, went over and sat down at the soda fountain.

According to the testimony of Charles Hardister, he and appellant were sitting at the soda fountain drinking a coke when Williams came in and sat down next to them. The appel-

lant, according to Hardister, asked Williams if he wanted a stick of gum and at the same time handed him "a stick of chewing gum in a yellow wrapper and some money exchanged." Williams gave the defendant "paper money" and the witness left.

Williams testified that he received a Juicy Fruit chewing gum wrapper foil from the appellant which he took directly to the waiting police officers upon leaving the drugstore. The police officers met Williams at the panel truck, where they received from him the Juicy Fruit chewing gum wrapper which they noted upon opening the same that it contained a white powder substance wrapped in tin foil. All of the officers present initialed the tin foil wrapper at the scene whereupon it was placed in a manila envelope and taken to police headquarters at the City-County Building in Indianapolis.

Lt. Ward testified that when he returned to police headquarters he conducted a Marquees test on the white powder and then deposited it in the police department's property room. Although the test is used to determine whether or not opium is present in a particular substance, the record is unclear as to whether or not Officer Ward actually did determine that it was present in the powder in this case. In any event he did testify that such a test was preliminary in nature and inconclusive as to the existence or non-existence of narcotic substances.

All of the above-described events took place on November 22, 1966. The police for reasons which do not appear from the record did not arrest appellant for the offenses in question until January 4, 1967. In any event appellant expressly states in his brief that his appeal is not intended to raise any objection to the testimony regarding the occurrence or non-occurrence of the transaction which took place in the drugstore between appellant and Williams. Nor does he question the status of the items or their whereabouts from the time of the transaction until they were first deposited in the police depart-

ment property room. Instead what appellant does contend is that there was a complete break in the chain of police custody of the Juicy Fruit Gum wrapper and its contents, unexplained by testimony at the trial, which prevents any finding that appellant was in possession of *heroin* as charged. Not only was there a break in the chain of custody between the time of defendant's possession of the chewing gum wrapper and the laboratory test of its contents, but there was also a second break which occurred between the execution of the laboratory test and the trial. Although no heroin was actually admitted into evidence at the trial, and we believe that conviction could be sustained without such admission, appellant seeks to exclude testimony relating to the results of the laboratory tests conducted by various state's witnesses, contending that whatever it was that was tested could not be shown to have come from his possession.

The chain of evidence method of identification is a widely recognized concept in both criminal and civil law. In most cases it is not possible to establish the identity of an exhibit in question by a single witness. The exhibit has usually passed through several hands before being analyzed or examined or before being produced in court. Certainly this is the case here. The record indicates that, from the time of the alleged "buy" until the trial, the exhibit was handled by at least eight different property clerks who either received or released it from the police property room. In addition it was handled by at least three police officers at different times during the same period.

Under such circumstances as these it is necessary to establish a complete chain of evidence tracing the possession of the exact and original exhibit to the final custodian. If one link of the chain is *entirely* missing, the exhibit cannot be introduced or made the basis for the testimony or the report of an expert or officer. If the testimony of the state's expert witnesses as to the narcotic content of the white powder is sought to be offered at trial, then the state should be prepared to establish a "chain of evidence" by either

producing police custody records showing the same or by testimony of witnesses. This is not a new rule in Indiana but rather a shorthand recognition of the well-established evidentiary requirement that a foundation must be laid connecting the evidence with the defendant before it is admissible at the trial. *Dixon* v. *State* (1963), 243 Ind. 654, 189 N. E. 2d 715; *Smith* v. *State* (1961), 241 Ind. 598, 172 N. E. 2d 673; *Neuwelt* v. *Roush* (1949), 119 Ind. App. 481, 85 N. E. 2d 506; *Hall* v. *State* (1928), 199 Ind. 592, 159 N. E. 420; *Berry* v. *State* (1919), 188 Ind. 102, 122 N. E. 324.

Although research reveals no Indiana cases which recite the phrase "chain of evidence" or "chain of possession" there is little doubt that the rule of law it represents prevails in this state. Especially is this true in the case of offenses such as the one before us where narcotics are involved. The danger of *tampering, loss, or mistake* with respect to an exhibit is greatest where the exhibit is small and is one which has physical characteristics fungible in nature and similar in form to substances familiar to people in their daily lives. The white powder in this case could have been heroin, or it could have been for example, baking powder, powdered sugar, or even powdered milk. The burden on the state in seeking to admit such evidence is clear. Unless the state can show by producing records or testimony, the continuous whereabouts of the exhibit at least between the time it came into their possession until it was laboratory tested to determine its composition, testimony of the state as to the laboratory's findings is inadmissible. For cases in other jurisdictions so holding see: *U. S.* v. *Freeman* (10th Cir. 1969), 412 F. 2d 1181; *U. S.* v. *Burris* (7th Cir. 1968), 393 F. 2d 81; *Williams* v. *U. S.* (9th Cir. 1967), 381 F. 2d 20; *Barquera* v. *State of California* (9th Cir. 1967), 374 F. 2d 177; *Novak* v. *District of Columbia* (D.C. Cir. 1947), 160 F. 2d 588; *Jemison* v. *State* (1965), 40 Ala. App. 581, 120 So. 2d 748; *State* v. *Rascon* (1965), 97 Ariz. 336, 400 P. 2d 330; *People* v. *Waller* (1968), 260 Cal. App. 2d 131, 67 Cal. Rptr. 8; *People* v. *Jud-*

*kins* (1964), 10 Ill. 2d 445, 140 N. E. 2d 663; *Breeding* v. *State* (1959), 220 Md. 193, 151 A. 2d 743; *State* v. *Baines* (Mo. 1965), 394 S. W. 2d 312; *State* v. *Johnson* (1965), 90 N. J. Super. 105, 216 A. 2d 397; *Joyner* v. *Utterback* (1923), 196 Iowa 1040, 195 N. W. 594; *People* v. *Pulliam* (1967), 28 App. Div. 2d 786, 281 N. Y. S. 2d 137; *State* v. *Chapman* (1968), 251 La. 1089, 208 So. 2d 686; *State* v. *Anderson* (1966), 242 Ore. 368, 409 P. 2d 681; *Andrews* v. *State* (1968), Tex., 436 S. W. 2d 546; *State* v. *Lee* (1968), Wash., 447 P. 2d 169; see also annotation 21 A. L. R. 1216.

Turning to the case at bar we find that the exhibit in question was deposited in the usual manner in the police custody room on the afternoon of November 22, 1966, within two hours after the "buy." The police property room records reflected receipt of same and no challenge to the evidence is made by appellant up to that point. *However on the next day, November 23, 1966, the record reveals that a Sergeant Elmore from the crime laboratory removed the exhibit from the police property room and that it was not returned until 6 days later when it was brought back by a Lieutenant Sullivan. The exhibit's whereabouts or disposition during this period was neither ascertainable from police records nor explained by any state's witnesses. Neither Sergeant Elmore nor Lieutenant Sullivan testified at the trial.* What happened to the Juicy Fruit gum wrapper and its contents between November 23 and November 29 was not testimonially established. It would appear to be unreasonable and unrealistic to argue that the unaccounted for absence of a police exhibit *of this nature* for six days and six nights is not a complete break in the chain of evidence.

Not until February 21, 1967, did the chemical examination take place which formed the basis for the expert testimony of the state's laboratory witness and the basis for the conviction. The fact that the chewing gum wrapper was identifiable as that acquired from appellant at the

drugstore cannot cure the defective evidentiary chain of custody which preceded the laboratory experiments. Appellant was not convicted for possession of a chewing gum wrapper.

We think that the facts in this case insofar as they relate to the custody of the alleged heroin compel us to conclude that the evidence of the laboratory findings of February 21, 1967, should have been excluded. The added burden imposed upon the prosecution by this holding is not great. Had the state produced either Sergeant Gilmore or Lt. Sullivan to account for the exhibit's whereabouts during the six day period, or to explain any discrepancies in the police department's custody records, there likely would have been no grounds to challenge the continuity of custody. Ordinarily where the chain of evidence is challenged, production of the record books of the police custody room will suffice. The fact that an out-of-the-ordinary procedure was followed or that oral testimony was required to explain errors in the written police records would go to the weight rather than the admissibility of the evidence.

We believe the rule announced here can be summarized as follows: *where as in the case of seized or purchased narcotics, the object offered in evidence has passed out of the possession of the original receiver and into the possession of others, a chain of possession must be established to avoid any claim of substitution, tampering or mistake, and failure to submit such proof may result in the exclusion of the evidence or testimony as to its characteristics.* Where such evidence or testimony is improperly introduced and is prejudicial to the party against whom it is directed, then the judgment of the trial court should be reversed.

In this case the appellant was convicted for possession of heroin. Clearly the evidence adduced at the trial as to the laboratory determination of the presence of heroin was prejudicial to the appellant—it was the *element* essential to conviction. Therefore in view of the above rule and the revelations

in the record, the judgment of the trial court should be reversed and a new trial granted.

Before doing so however, it is incumbent upon us to dispose of appellant's second argument in his appeal before this court. If appellant's claim that there is no existing Indiana law regulating the possession or sale of heroin is correct then the granting of a new trial would obviously be inappropriate. Appellant would be entitled to a dismissal of the cause.

The proposition which appellant advances in the second part of his brief is this: that by virtue of the fact that the United States became an adherent to the *Single Convention On Narcotic Drugs*, 1961, 18 United States Treaties and Other International Agreements, 1408 [Approved by the U. S. Senate on May 8, 1967, effective on June 24, 1967], the trial court was without statutory authority to enter judgment against appellant in this case; that Article VI of the U. S. Constitution provides that all Treaties made shall be the supreme law of the land and that the statute under which appellant was convicted was by implication abrogated by the treaty. We disagree.

A careful examination of the *Single Convention On Narcotics* indicates that it deals with the production and control of opium poppy and has no effect on the states' rights to impose criminal sanctions for the illegal possession and sale of narcotics. Appellant notes that the treaty provides that each member nation shall have only *one such agency engaging in such control.* However, a reading of article 23 of the treaty answers the questions as to *what the one agency is to control.*

### "Article 23, Paragraph 2

Each such party shall apply the following provisions to the cultivation of the opium poppy for the production of opium and to opium: (a) The Agency shall designate the areas in which, and the plots of land on which, cultivation of the opium poppy for the purpose of producing opium shall be permitted. (b) Only cultivators licensed by the

Agency shall be authorized to engage in such cultivation. (c) Each license shall specify the extent of the land on which the cultivation is permitted. (d) All cultivators of the opium poppy shall be required to deliver their total crops of opium to the Agency. The Agency shall purchase and take physical possession of such crops as soon as possible, but not later than four months after the end of the harvest."

*"Article 23, Paragraph 3*

The governmental functions referred to in paragraph 2 shall be discharged by a single government agency if the constitution of the Party concerned permits it."

To argue that the single agency concept provided for by the Convention has eliminated Indiana's police power to control the illegal possession of narcotics is to misconceive the purpose of that United Nations treaty. The statute under which appellant was convicted, Ind. Ann. Stat. § 10-3538, *supra,* is a penal statute found in our criminal code having no relation to the regulatory purposes embodied in the Convention. In the former the possession of heroin is a crime:

"(c) Any person who possesses or has under his control any narcotic drugs except as authorized under the laws of the United States or the state of Indiana, shall upon conviction be fined not more than one thousand dollars [$1,000] and be imprisoned for not less than two [2] years nor more than ten [10] years. For a second or subsequent offense, or if, in case of a first conviction the offender shall previously have been convicted of manufacturing, selling, possessing, prescribing, administering, dispensing compounding, or soliciting any other person to manufacture, sell, prescribe, administer, dispense or compound any narcotic drugs in violation of the laws of the United States or of any other state, territory or district, the offender shall be fined not more than two thousand dollars [$2,000], to which shall be added imprisonment in the state prison for not less than five [5] years, nor more than twenty [20] years." [§ 10-3538, *supra.*]

The latter recognizes by its Preamble the necessity of growing and cultivating narcotic derivatives for medical purposes and the desirability of controlling the international traffic

thereof. There is no conflict between the provisions of that treaty and our own narcotics laws either express or implied which would require the conclusion that our laws have been abrogated thereby.

Therefore for the foregoing reasons, judgment is reversed with instructions to the trial court to grant appellant's motion for a new trial.

Judgment reversed.

Arterburn, DeBruler and Givan, JJ., concur; Jackson, J., concurs in result.

NOTE.—Reported in 255 N. E. 2d 652.