JOHN N. M. N. JONES *v.* STATE OF INDIANA.

[No. 1271S357. Filed May 25, 1973.]

*George A. Purvis,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *William D. Bucher,* Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal by John N. M. N. Jones, appellant (defendant below), from a conviction for possession of heroin. On March 4, 1971, appellant was charged by affidavit, and he then waived arraignment and entered a plea

of not guilty. Trial by jury commenced on August 23, 1971, and the jury returned a verdict of guilty. Appellant filed a Motion to Correct Errors which was overruled and this appeal followed.

Two issues are presented for review:

1. Whether the State's exhibits 1, 2 and 3 and testimony thereon were properly admitted into evidence; and

2. Whether the evidence was sufficient to sustain the conviction.

The facts are generally as follows. An officer of the Indianapolis Police Department saw appellant standing on a street corner. The officer approached appellant and identified himself as a police officer. The appellant then broke and ran. The officer pursued appellant, keeping him at all times within his sight. As he was running, appellant threw something to the ground. The officer then caught the appellant, and after a scuffle, subdued him and placed him under arrest. The officer retrieved what had been thrown to the ground which turned out to be a yellow envelope. Inside the envelope were 100 capsules containing a white, powdery substance. The officer then conducted a Marquis Reagent test on the contents of one of the capsules and the test indicated that the substance could possibly be heroin.

The officer initialed the envelope and took it to the police station where he placed it in the narcotic lock box. On October 23, 1970, Sergeant Caine, the only man with a key to the lock box, removed the evidence from the lock box and placed it in the narcotic vault. It requires two keys to open the vault; one of the keys is in the possession of an officer from the property room, and the other is kept by a narcotics officer. On December 28, 1970, Sergeant Caine removed the evidence from the vault and took it to the crime lab. The evidence apparently remained in the lab until January 7, 1971, when Caine, who qualified as an expert in drug identification and testing, conducted several tests on the substance. He then returned the evidence to the vault where it remained until the

arresting officer removed it and brought it to court the day of the trial. Based on the tests, Sergeant Caine testified that he was of the opinion that the capsules contained heroin.

Appellant's major objection to the admission of the exhibits (and objection to Caine's testimony based on tests conducted on the exhibits) was that a break in the chain of possession of the evidence occurred, making the evidence inadmissible under the doctrine established in *Graham* v. *State* (1970), 253 Ind. 525, 255 N. E. 2d 652. Under that doctrine, a foundation must be laid connecting the exhibit with the defendant and showing the continuous whereabouts of the exhibit from the time it came into the possession of the police until it was laboratory tested. The purpose of the rule is to avoid any claim of substitution, tampering or mistake.

Appellant claims that the period from December 28, 1970, when the evidence was taken to the laboratory, and January 7, 1971, when the testing was conducted, constitutes a sufficient break in the chain to make the evidence inadmissible. We do not agree. Sergeant Caine testified that while he was working on the capsules, they were in his exclusive control and possession. The exhibits were at all times within the confines of the police department and the only time they were not under lock and key was while they were in the laboratory.

Certainly difficulties are presented in this instance. A high degree of scrutiny must be placed on goods of a fungible nature such as heroin, especially where, as here, the evidence is an essential element of the crime. See *Guthrie* v. *State* (1970), 254 Ind. 356, 260 N. E. 2d 579. We are faced with a ten-day period during which the State has not explained what security measures, if any, were taken to maintain the integrity of the exhibits. However, unlike *Graham,* we are not faced with a complete and unexplained break in the chain. The only officers who were known to handle the exhibits testified at the trial.

We are not here concerned with absolute certainty but with probabilities. The mere possibility that the evidence might have been tampered with will not make the evidence totally objectionable. *Kolb* v. *State* (1972), 258 Ind. 469, 282 N. E. 2d 541; *Rose* v. *State* (1972), 258 Ind. 377, 281 N. E. 2d 486. The only time the exhibits were not under lock and key, they were in the laboratory. It is unlikely that anyone without business in the laboratory would be present and the possibility of tampering seems highly remote. We hold the chain of custody sufficient in the case at bar and we hold the exhibits were properly admissible into evidence.

Appellant also contends the introduction of State's exhibit No. 3, which was one lone capsule containing a white, powdery substance, was erroneous because it was never connected to defendant or to this crime in any way. The record shows, and the State concedes, that no foundation was laid for the introduction of this exhibit. The reasonable inference would be that it was one of the capsules from the envelope, but such an inference does not relieve the State of its duty to lay a proper foundation for the introduction of the exhibits.

However, the basis for appellant's objection to State's Exhibit No. 3 was the same as it was for Nos. 1 and 2; that is: insufficient chain of possession. At no time did he object for the reason that the exhibit was not sufficiently connected to the defendant. He did not even include such an allegation in his Motion to Correct Errors. Where an exhibit is admitted over an accused's objection, the accused cannot urge different objections for the first time on appeal. *Short* v. *State* (1968), 250 Ind. 459, 237 N. E. 2d 258.

Even had appellant objected on the basis of an insufficient connection, he has failed to demonstrate how the admission of the exhibit was prejudicial to his cause. The capsule in question was identical to ninety some other capsules which

were properly admitted into evidence. The exhibit could only be considered cumulative.

Appellant's second contention that the evidence is insufficient to support the conviction is based on the claim that the tests conducted on the substance were not conclusive enough to establish the presence of heroin beyond a reasonable doubt. The testimony of Sergeant Caine showed that he conducted five preliminary indicator tests on the substance, and that the tests indicated that an opium derivative was present. He then stated that it was his expert opinion that the substance was heroin. At no time during the direct or cross-examination of Caine was he questioned as to the nature or conclusiveness of these tests. Under these circumstances, we are of the opinion that the State established a *prima facie* showing that heroin was indeed present. Any weakness in the techniques and methods of testing should be established either by cross-examination or through the employment of one's own expert witness. The appellant followed neither course in this instance. Since the State's *prima facie* showing of heroin remained uncontested and uncontradicted, we hold the evidence to be sufficient to establish the presence of heroin. There being no other basis for the claim of inadequate evidence, we hold that the evidence was sufficient to support the conviction.

For all the foregoing reasons the judgment of the trial court is affirmed.

Judgment affirmed.

Arterburn, C.J., Prentice, J., concur; Givan, J., concurs with opinion; DeBruler, J., dissents with opinion.

### CONCURRING OPINION

GIVAN, J.—I concur in the result in this case, but take exception with the language used by the majority opinion in dealing with the last contention of the appellant, that the evidence is insufficient to support the conviction.

The majority opinion unnecessarily infers that defense counsel may have been at fault for not conducting a cross-examination of the State's witnesses concerning the tests made to determine whether the substance possessed by the appellant was heroin.

Quite often extensive cross-examination of an expert witness merely results in a further demonstration of his expertise, resulting in the making of the case for the side presenting him as a witness.

Following the expert testimony presented by the State, defense counsel had a decision to make concerning the nature of his cross-examination. He was in the best possible position to be the judge as to how far he should go in that regard. The course he took is obvious from this record. We must presume he believed, and we are in no position to argue, that an extensive cross-examination at that point would only have accentuated the State's case. The State had a good case against the appellant, and the appellant was well defended. Insinuations to the contrary are uncalled for.

### DISSENTING OPINION

DEBRULER, J.—I dissent from the majority opinion in this case because I do not believe the foundation laid by the State for either the admission of the heroin exhibits themselves or expert testimony as to its chemical makeup was adequate to establish the necessary chain of possession.

There have been three cases handed down by this Court in recent years which have established the requirements of chain of possession. In the *Graham* case police records showed that the heroin exhibit had been removed from the property room by a police officer on one day and not returned until six days later by another officer. Neither officer testified at the trial and no explanation of the whereabouts of the exhibit in the intervening period was given. In that situation we held:

> "Unless the State can show by producing records or testimony the continuous whereabouts of the exhibit at least

between the time it came into their possession until it was laboratory tested to determine its composition, testimony of the State as to the laboratory's findings is inadmissible." *Graham* v. *State* (1970), 255 Ind. 237, 255 N. E. 2d 652.

The case of *Guthrie* v. *State* (1970), 254 Ind. 356, 260 N. E. 2d 579, concerned vaginal smears which were delivered to the Indiana State Police Command Post in connection with a rape prosecution. The delivery was made by one testifying officer who stated he left the exhibits on the Post Commander's desk at about midnight. No one was at the desk at the time and the Post was quiet. The next morning at 8:00 a.m. another testifying officer picked up the exhibit from the same place on the desk and took it to the laboratory for testing. The Court in that case stated:

> "However, whereas here the State has introduced evidence which strongly suggests the exact whereabouts of the evidence the issue becomes one of probabilities."

Most recently the *Kolb* decision concerned a packet of marijuana sent to the Indiana State Police Laboratory. The exhibit was analyzed in the property room but at an unknown time. Appellant complained that other persons had access to the property room but we held that a chain of custody was established because, "There is an explanation of presence of the exhibits for each day in question." *Kolb* v. *State* (1972), 258 Ind. 469, 282 N. E. 2d 541.

It seems clear to me, therefore, that there has developed a two stage analysis of the chain of custody problem. The first stage is to establish the "exact whereabouts" of the exhibit during the time it was in police custody. If the whereabouts of the exhibit cannot be established for the entire time it was in police custody the evidence should be excluded at that point without further consideration. It is only when the location of the exhibit is clearly established that we need concern ourselves with "probabilities" as the majority states. In some instances the location of the exhibit would create a high

probability if remained undisturbed. *Guthrie* v. *State, supra.* It is impossible to weigh the probabilities of tampering, however, unless it can first be clearly established where the exhibit was at all times.

Turning to the facts in this appeal I do not believe this record can sustain the majority's statement that, "The only time the exhibits were not under lock and key they were in the laboratory." Sergeant Caine's testimony concerning the location of the exhibits between the time he first removed it from the vault on December 28th and the testing on January 7th creates a ten day break in the location. At trial the evidence on this point was the following:

"Q. Have you performed any tests in the course of your duties on any of these capsules?

A. Yes I have.

Q. When?

A. I removed the evidence from the narcotic vault on December 28, 1970, and I took it to the laboratory for testing. On January 7, 1971, I tested it. . . ."

At this point defense counsel objected to the Sergeant reading from his notes. The objection was overruled and the Sergeant continued his testimony concerning the testing on January 7th. In my opinion this can only be viewed as a failure by the State to establish the location of the exhibit at all times. It is conjectural to state that this testimony esablishes that the exhibit remained in the lab during that period. The testimony leaves us without any information as to where it was and the failure to clearly establish the location at all times is a per se failure to establish a sufficient chain of custody. I believe the cases in Indiana hold that we should not be weighing the probability of tampering, as the majority attempts, unless we can first clearly establish where the exhibit was located.

I would further disagree with the treatment of the probabilities of tampering, even if we could establish the location of the exhibit as being in the laboratory at all times. There

is no testimony as to what security arrangement existed in the laboratory; whether evidence was left in the open or locked up, or who had access to the laboratory during this time. There is a failure by the State to provide us with the circumstances surrounding the lab in order that we may weigh the factors involved and determined the probabilities of tampering.

In both the *Guthrie* and *Graham* opinions we stated that we must exercise special care in the custody problem when the exhibit is one of a fungible nature and where its nature is an essential element of the crime. The exhibit here is of that nature and I do not believe the State has met its burden of establishing the requisite foundation precedent to admission of these exhibits, particularly in light of the special care we should be exercising here.

NOTE.—Reported in 296 N. E. 2d 407.