Donald E. WILLIAMSON, Robert D. Williamson, Appellants,

v.

STATE of Indiana, Appellee.

No. 481S109.

Supreme Court of Indiana.

June 21, 1982.

. Bruce A. Boje, Castor, Richards, Adams & Boje, Noblesville, for appellants.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendants-appellants, Donald Eugene Williamson and Robert Dale Williamson, were each convicted of Burglary, Ind.Code § 35–43–2–1 (Burns Repl. 1979), a Class B felony, and also convicted of Theft, Ind. Code § 35–43–4–2 (Burns Supp. 1982), a Class D felony, at the conclusion of a jury trial in Hamilton Superior Court on August 20, 1980. Both men were sentenced to sixteen (16) years imprisonment on the Class B felony and four (4) years on the Class D felony, with sentences to run concurrently. This appeal follows.

Six issues are raised on appeal, concerning: 1) whether the trial court erred in overruling a motion to suppress evidence because of the State's failure to comply with discovery orders; 2) whether the trial court erred in granting the State's motion *in limine* forbidding any discussion with the jury about the potential penalties for the crimes charged; 3) whether the trial court erred in admitting into evidence State's Exhibits 4 through 9, inclusive; 4) whether the trial court erred in admitting photographs taken at the scene of the burglary; 5) whether the trial court erred in giving instruction 8(B) on the subject of the flight of the defendants; and 6) whether there was sufficient evidence presented to convict defendants on charges of theft and burglary.

The evidence revealed that on the morning of March 25, 1980, the home of Mr. and Mrs. Martin Teeters had been burglarized. The defendants were apprehended later that day with the items taken from the Teeters' residence in their possession.

I.

On August 19, 1980, after the jury had been sworn and preliminary instructions read to them by the court, defendants orally moved that all physical evidence which the State intends to show or bring forth before the jury or to introduce into evidence be suppressed because the defendants filed a motion for discovery and asked that those items be produced and they were never produced. Defendants' motion for discovery was filed on April 28, 1980, and asked the court to require the State to make available to the defense attorney the right to examine, inspect, copy, photograph, and make and take photostatic copies of: names and addresses of State's witnesses, including any written or recorded statements or memoranda of the witnesses; any written or recorded statements and the substance of any oral statements made by the accused and a list of witnesses to the making and acknowledgement of such statements; any reports of statements of experts, including results of physical examinations, scientific tests, experiments or comparisons; and any books, papers, documents, photographs or tangible objects which the prosecuting attorney intended to use in the hearing or trial or which were obtained from or belonged to the accused. The prosecutor responded to defendants' motion to suppress by stating that the pros-

ecutor's office had received defendant's motion for discovery on April 30. The prosecutor responded in writing to the defendant, informing him that the entire prosecutor's file would be available to the defendants for all purposes for which the discovery motion asked. The prosecutor indicated he had notified the defense counsel that all items they had listed in the discovery motion were available in the prosecutor's office and they would be made available to the defendants on request, for inspection and photocopying. The prosecutor indicated that the defendants never contacted him to make arrangements to come to the prosecutor's office and examine the file. Defendants contend that they did not feel it would be productive to go to the prosecutor's office because many of the items were in the possession of the Hamilton County sheriff's department and they didn't feel they had a right to order deputy sheriffs to give them items nor the duty to seek out various deputies holding different items. The trial court overruled defendant's oral motion for suppression, indicating that the response filed by the prosecutor made the items available to the defendants and the burden was on the defendants to follow up and tell the prosecutor what they wanted and arrange to get together with the prosecutor to obtain the items.

■ The trial court is given wide discretionary latitude in discovery matters. Absent clear error in its decision, it will not be overturned. The trial judge is in the best position to determine if any harm has been sustained by non-compliance with an order of discovery and he likewise is in the best position to determine what judicial acts may alleviate or eliminate the damage. *Rock v. State*, (1981) Ind., 426 N.E.2d 1320; *Harris v. State*, (1981) Ind., 425 N.E.2d 112; *Reid v. State*, (1978) 267 Ind. 555, 372 N.E.2d 1149. There was no request by defendant for a continuance nor any request to be given time to view the exhibits at that time. *See Reid, supra*. The court did not err in denying defendant's motion to suppress.

## II.

On August 19, 1980, at the beginning of the trial, the State filed a motion *in limine* which requested the court to enter an order preventing the Williamsons or their counsel from mentioning or arguing to the jury the possible penalties for the charged offenses. The court granted this motion. On a subsequent motion to reconsider its ruling the court refused to do so.

■ Defendants contend that during *voir dire* examination of the jury, the prosecuting attorney mentioned to the prospective jurors the distinction between burglary, a class B felony, and theft, a class D felony. Defendants believe they had a right to go into the subject further and discuss with the jury the penalties involved for the two crimes. We find no merit in defendants' contentions. It was proper for the prosecutor to discuss the crimes involved as it was necessary for the jury to understand the nature of the charges and the facts necessary to prove them. The defendants, however, have no right to have the jury informed as to the length of penalties possible for the offenses charged. Under Ind.Code § 35–50–1–1 (Burns Repl.1979) juries have no duties or powers as to penalties imposed. It is, therefore, improper for the trial judge to permit a discussion of the possible penalties at the request of either of the parties. *Craig v. State*, (1979) Ind., 398 N.E.2d 658; *DeBose v. State*, (1979) Ind., 389 N.E.2d 272. The lengths of penalties for any class of crimes with which the defendants were charged was irrelevant and the motion did not deny the defense any opportunity to present any admissible evidence or proper argument. *Emory v. State*, (1981) Ind., 420 N.E.2d 883, 885.

## III.

■ At trial the court admitted into evidence State's Exhibits 4 through 9 inclusive. Exhibit 4 was a silver serving tray, Exhibit 5, gold dental inlays, Exhibit 6, a 1914 dime of Ruth Teeters', sealed in a case and bearing her name, Exhibit 7 was a jewelry case containing a necklace, Exhibit 8 was a silver fork and Exhibit 9 was a silver fork.

Defendants object to the admission because no proper chain of custody had been shown to insure their identity and that they had not been sufficiently connected to the defendants to make them admissible evidence. Exhibits 4, 7, 8, and 9 had been returned to the custody of the Teeters after the investigation and up to the time of trial.

Appellants cite *Graham v. State*, (1970) 253 Ind. 525, 255 N.E.2d 652, to support their point that a foundation must be laid connecting the evidence with the defendant before it is admissible at trial. It appears the trial court complied satisfactorily with *Graham. Graham* was primarily concerned with fungible items (heroin) that cannot be individually identified without showing a proper chain of custody and control to ensure they have not been tampered with or replaced. *Id.* at 531, 255 N.E.2d at 655. All of the items here were non-fungible and permit ready identification by the witnesses observing them. Items 4, 7, 8, and 9, were represented in a photograph taken by the police and identified as State's Exhibit I, which pictured all of the items taken from the automobile driven by the Williamsons, including Exhibits 4, 7, 8, and 9. The Teeters identified these items as belonging to them and as items that were taken in the burglary on March 25, 1980. The exhibits were identified by police officer Spencer as items taken from the trunk of the Williamsons automobile immediately after their apprehension when the automobile was inventoried at the scene and at the police garage. Items 5 and 6, the gold dental inlay and 1914 dime bearing Ruth Teeters' name were taken from the pockets of jackets worn by the Williamsons at the scene of the arrest.

There was ample and sufficient eye-witness identification of State's Exhibits 4 through 9 inclusive, to lay a foundation justifying their admission into evidence. *Jackson v. State*, (1981) Ind., 426 N.E.2d 685, 687; *Walker v. State*, (1980) Ind., 409 N.E.2d 626, 629.

## IV.

During the testimony of Sergeant Norman Castor, the State introduced and the court admitted, over Williamsons' objection, Exhibits 2 and 3. These exhibits were photographs of footprints found at the Teeters' residence by the officer immediately after the break-in. The record shows that defendant objected to the admissions of 2 and 3, as "... [o]n the ground that according to Sergeant Castor, he will testify at a later point that the footprints in here were made by a certain shoe." The court overruled this objection and permitted the exhibits into evidence. Officer Castor had testified that exhibit 2 was a footprint impressed in pile type carpet in the dining room of the Teeter residence and showed a bar type sole imprint. Exhibit 3 was an imprint taken from the back door of the Teeters residence. The back door was made of wood and was black in color. Footprint powder was put on the door and brought out the imprint on State's Exhibit 3, showing half-moon configurations. Later, the shoes worn by the Williamsons and taken from them immediately after their arrest showed that one of them wore shoes with a bar type design on the heel and the other wore boots with half-moon configurations on the sole. These shoes and boots were admitted into evidence as State's Exhibits 10 and 11. It does not appear there was any objection to the admission of 10 and 11, and no question is raised in this appeal on those two items.

The only objection to Exhibits 2 and 3 raised by defendants here is that they were irrelevant. Defendants argue that there was no testimony that the footprints shown in the photograph were made by the person or persons breaking into the Teeters' residence and therefore they were not connected to the Williamsons. The evidence did tend to show, as has been noted above, that each of the Williamsons was wearing a pair of shoes or boots that matched or were similar to the configurations shown by the boot print on the door and the footprint on the carpeting in the dining room. Police officers also testified that these were not unique footprints and the number of shoes and boots having those configurations may, and probably do, number in the thousands.

These considerations, of course, go to the weight of this evidence and not the admissibility of it. The jury had before it the photographs of the shoe and boot prints and the testimony of the witnesses as to their appearance at the scene. The jury also had the boots and shoes of the defendant to compare with these prints. Items of evidence do not have to be conclusive to be admissible. If items of evidence tend to prove a certain fact, even though slightly, it is proper for the trier of fact to weigh that evidence in making its determination. *Waters v. State,* (1981) Ind., 415 N.E.2d 711, 713; *Hill v. State,* (1979) Ind., 394 N.E.2d 132, 134. The court did not abuse its discretion in admitting exhibits 2 and 3 into evidence.

### V.

■ The trial court gave final instruction 8(B) which stated as follows: "The flight of a person immediately after the commission of the crime with which he is charged, if there was such flight, is a circumstance which may be considered by you in connection with all the other evidence to aid you in determining his guilt or innocence."

Defendants contend that this instruction on flight was improperly given by the court since there was no evidence that the Williamsons were fleeing from this particular crime. Defendants allege that when the officers began to pursue them, the officers did not know that the Williamsons were connected with the burglary or theft charged here; thus, they were not being pursued for the purpose of apprehending them to arrest them for these charges. We find no merit in defendants' contention on this issue. The attitude of flight exists in the mind of the one fleeing and not the pursuer. Evidence of flight or an attempt to avoid arrest is admissible to tend to show guilt or knowledge of guilt. *Dunville v. State,* (1979) Ind., 393 N.E.2d 143, 147. Where there is evidence of flight, an instruction in the form given by the trial judge here, is proper. *Lindley v. State,* (1981) Ind., 426 N.E.2d 398, 402; *Roseberry v. State,* (1980) Ind., 402 N.E.2d 1248, 1251.

The police officer testified that he noticed the Williamsons were acting suspiciously when they observed him and he therefore attempted to approach them. On such approach, the defendants immediately began to flee and were apprehended only after there was an exchange of gunfire between the police and the Williamsons, and after the Williamsons wrecked their car attempting to negotiate a curve. The instruction was therefore properly given by the court.

### VI.

■ Finally, defendants assert that there was an insufficiency of the evidence to support a verdict of guilty of the charges of burglary and theft. Upon a review for sufficiency of the evidence, this Court will look only to the evidence most favorable to the State and all reasonable and logical inferences to be drawn therefrom. *Reburn v. State,* (1981) Ind., 421 N.E.2d 604; *McCollum v. State,* (1980) Ind., 413 N.E.2d 912.

The evidence showed that on March 25, 1980, the home of Mr. and Mrs. Martin Teeters had been broken into and several items of property were missing. The Teeters lived seven miles from Noblesville, Indiana, and left their home to go out for breakfast at about 8:15 a. m. They returned at 10:15 a. m., to find their storm door open, their back door kicked in, and their home in disarray. Items missing from the home were silver, coins, two portable television sets and some gold dental work of Mrs. Teeters. One of the coins was a 1914 dime in a case inscribed, "Ruth Teeters, year of birth." There was also a small box holding two teeth with gold inlays which belonged to Mrs. Teeters.

The Teeters called the Hamilton County Sheriff's Department and Sgt. Norman Castor responded to the call. He observed the damage and disarray of the home and noted a footprint on the back door. He photographed this footprint. Castor also discovered another footprint left in a pile carpet in the home and photographed it. One of the footprints showed two half-moon crescents on each side coming to a point toward

the back of the heel. The other footprint showed a soft rubber type design with three bars across the heel.

On the same date, Marion County Deputy Sheriff Gene William Donovan was patrolling at Lynhurst Drive and Plainfield Avenue in Marion County when he saw the two defendants acting suspiciously in a 1978 Pontiac. He began following the vehicle to observe the occupants when they increased their speed to 80 miles per hour. He continued to pursue the Pontiac automobile at a high rate of speed. Donovan radioed for assistance and had other police officers join in the chase. Deputy Darrell Ferryman joined the chase at 10:40 a. m., and exchanged gunshots with Robert Williamson. The defendants' automobile finally failed to negotiate a turn and hit a tree. The two Williamsons were then apprehended by Ferryman and Donovan. Items found in the Pontiac automobile were identified by Mr. and Mrs. Teeters as those taken from their home. One of the items was a 1914 dime in a case inscribed "Ruth Teeters year of birth" and the other was a small box holding two teeth with gold inlays. At the Marion County Jail, the shoes being worn by the two defendants were taken from them and were found to have sole and heel markings similar to the prints found at the Teeters' residence and photographed by Sergeant Castor.

The evidence clearly showed that shortly after the commission of this crime, the defendants were apprehended in Marion County and had in their possession items taken during the burglary at the Teeters' home. The unexplained possession of property recently stolen during a burglary will support an inference of guilt. *Goodpaster v. State*, (1980) Ind., 402 N.E.2d 1239, 1244. The footprints at the scene were similar to the prints of the configurations on the boots and shoes worn by the defendants and of the two different footprints at the scene, each of the defendants was wearing shoes or boots matching one of those prints. Pursuant to an alibi defense, the defendants offered witnesses that testified the defendants were seen in places of business in Indianapolis from 8:15 a. m., to 9:00 a. m.,

on the day of the break-in. The evidence showed that the burglary occurred between 8:15 and 10:15 a. m. The defendants were first observed by the police and pursued by them around 10:40 a. m. The alibi witnesses testified that it was about a forty-five minute drive from the places of business in Marion County to the scene of the crime in Hamilton County. The evidence showed that the defendants could have left Marion County, arrived at the Teeters' residence, committed the burglary, and escaped with the property, and still be within the time frame testified to by the Teeters and the police who apprehended the defendants. There was sufficient evidence from which the jury could reasonably find that the defendants committed the crimes charged.

The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.