**Robert McANALLEY, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 185S19.

Supreme Court of Indiana.

Nov. 6, 1987.

William B. Powers, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stephenson, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Defendant-appellant Robert McAnalley received a sentence of thirty-two years, with one year suspended, following his conviction for Carrying a Handgun Without a License, a class D felony, and determination as a habitual offender. In subsequent separate proceedings which occurred following the initial submission of the record and briefs of the parties in this appeal, one of defendant's prior convictions was set aside. The trial court then vacated the habitual offender finding herein. Because of these intervening events, we need address only the following remaining issues:

1. insufficient evidence on the element of "carrying";
2. insufficient chain of custody;
3. denial of his motion for judgment on the evidence;
4. allowing rebuttal evidence;
5. refusal to give defendant's tendered final instructions; and,
6. failing to find mitigating circumstances and not giving alternate misdemeanor sentencing.

The charges against defendant arose from an incident on the night of October 27–28, 1984, at an Indianapolis tavern. Responding to a radio call concerning a possible disturbance at the tavern, police arrived, entered, and saw the defendant throw what appeared to be a weapon into the corner of the tavern. Officer Brown retrieved a handgun from the corner where the object had been thrown. He found nothing else on the floor. Upon learning that defendant did not have a permit to carry the weapon, police made the arrest.

### Issue 1—Definition of "Carrying"

Defendant first contends that his conviction is not supported by sufficient evidence, particularly as to the element of "carrying." Ind. Code § 35–47–2–1 provides that "a person shall not carry a handgun in any

vehicle or on or about his person, ... without a license...." Prior cases involving the carrying of a handgun *in a vehicle*, have required proof of an intention to convey or transport the weapon, *State v. Cox* (1973), 156 Ind.App. 548, 297 N.E.2d 920; *Klopfenstein v. State* (1982), Ind.App., 439 N.E.2d 1181. Defendant argues that because the handgun did not belong to him, and because there was no evidence that he brought it into the tavern or otherwise transported or conveyed the weapon, the element of "carrying" was not proved.

However, the issue in *Klopfenstein* was whether a driver violated the statute when the handgun was in the possession of a passenger. It required only knowledge of the presence of the handgun in the vehicle, not personal possession. Whether there was sufficient transportation of the weapon from one place to another, was not at issue. As authority for its reference to the intent to convey or transport, as an element of the crime, *Klopfenstein* cited *State v. Cox, supra.* Noting the absence of any evidence that a vehicle had been driven or moved while a handgun was in it, the *Cox* opinion stated:

> While we are not prepared to say that locomotion must be proven in order to constitute the offense of "carrying" an unlicensed pistol in a vehicle, we, nevertheless, feel that as a minimum requirement the State must at least offer evidence from which the trier of fact could reasonably infer an intention to convey or transport the weapon from one place to another.

156 Ind.App. at 552, 297 N.E.2d at 923.

■ We must determine whether the legislature, by using the verb "carry," instead of "hold" or "possess," intended to require the element of locomotion to constitute the offense. Indiana had long adhered to the rule that penal statutes are to be strictly construed, and matters and things which are not clearly included cannot be brought within the operation of such statutes by construction. *Vanhook v. State* (1840), Ind., 5 Blackf. 450. In giving effect to this rule, however, the statute should

not be overly narrowed so as to exclude cases fairly covered by it and should be interpreted so as to give efficient operation to the intent of the legislature. *State v. Bigbee* (1973), 260 Ind. 90, 292 N.E.2d 609.

When seeking to determine the interpretation to be given a word used in a criminal statute, we are concerned both with legislative intent and the probable perceived common meaning. *See*, R. Dickerson, *The Interpretation and Application of Statutes*, 34–38 (1975). Germane to both considerations is reference to an authoritative dictionary of common usage contemporaneous with the applicable legislative enactment. Defendant herein was charged with carrying an unlicensed handgun as proscribed by the 1983 revision of the statute [1]. Webster's New World Dictionary, Second College Edition (1982), enumerates twenty-seven separate meanings of the word "carry" as a transitive verb. Among them, the following are relevant to our consideration in this case:

> 1. to hold or support while moving (to *carry* a package) 2. to take from one place to another; transport, as in a vehicle (to *carry* the mail) 3. to hold and direct the motion of; be a channel for; convey; (a pipe *carrying* water) ... 8. to bear the weight of (the balusters *carry* a railing) ... 11. to have on one's person or keep with one (to *carry* a watch, to *carry* memories) ... [Emphasis in original]

Thus, since both connotations ("to transport" and "to have on one's person") are recognized, resort to the dictionary is inconclusive.

Legislative intent is nevertheless apparent by a comparison of the two possible meanings. We cannot discern a reasonable basis for condoning the unlicensed possession of a handgun while imposing criminal sanctions for the same conduct if coupled with ambulation.

We therefore hold that, when referring to the carrying of a handgun on or about one's person, as distinguished from carrying a handgun in a vehicle, the statute proscribes having on one's person an unlicensed handgun. Conviction of the offense does not require proof that the weapon was conveyed or transported from one place to another. Thus, to address the issue first identified by defendant, we must determine whether the evidence was sufficient to show that the defendant possessed the handgun on his person.

In addressing the issue of sufficiency of evidence, we will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223; *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Defendant admits that the evidence shows that defendant at least had possession of the handgun and was examining it at the time he observed red lights on a vehicle signaling the approach of police, whereupon he discarded the weapon. Such evidence is sufficient to prove the "carrying" element of the offense.

Defendant also asserts that there was an absence of proof that defendant "knowingly and unlawfully carried" the handgun without a license. While this argument is included under defendant's discussion of Issue 2, we shall consider it here. Criminal intent may be inferred from defendant's conduct. *Duncan v. State* (1980), 274 Ind. 144, 409 N.E.2d 597; *Deneal v. State* (1984), Ind., 468 N.E.2d 1029. Specific culpability is not a statutory element of this offense. Pursuant to Ind. Code § 35–41–2–1, commission of an offense occurs when a person "voluntarily engages in conduct in violation of the statute defining the offense." Here, the evidence was ample to prove that defendant voluntarily engaged in the proscribed conduct.

### Issue 2—Chain of Custody

Defendant next contends that the court erred in admitting State's exhibit no.

---

1. Indiana Acts 1983, P.L. 311, Sec. 32.

1, the handgun, because "there was not a sufficient chain of custody". Defendant does not quarrel with the sufficiency of evidence showing the possession of the handgun from the time it was picked up by the police from the corner of the tavern until the time of trial. Rather, he contends that the State should also have been required to prove the chain of custody of the handgun from the time it entered the tavern.

The argument is without merit. The chain of custody doctrine requires an adequate foundation to be laid showing the continuous whereabouts of the exhibit beginning with the time it came into the possession of the police. *Graham v. State* (1970), 253 Ind. 525, 255 N.E.2d 652; *Russell v. State* (1986), Ind., 489 N.E.2d 955; *Lilly v. State* (1985), Ind., 482 N.E.2d 457. The purpose of the rule is to avoid any claim of substitution, tampering or mistake. *Graham, supra; Henry v. State* (1978), 269 Ind. 1, 379 N.E.2d 132; *Jones v. State* (1973), 260 Ind. 463, 296 N.E.2d 407.

### Issue 3—Judgment on the Evidence

■ Defendant claims that the trial court erred in overruling his motion for judgment on the evidence at the close of the State's case. In essence, he argues that proof and reasonable resulting inferences of defendant's possession of the weapon, throwing it into a corner of the tavern, and being unlicensed to carry it, were insufficient because of the failure to prove the element of "carrying." In our discussion above, we have discussed the proper meaning of the term "carrying." We find the evidence was sufficient.

Furthermore, because defendant presented further evidence after the trial court denied his motion for judgment on the evidence, any error on the ruling is not subject to appellate review. *Dziepak v. State* (1985), Ind., 483 N.E.2d 449; *Parker v. State* (1976), 265 Ind. 595, 358 N.E.2d 110.

### Issue 4—Rebuttal Evidence

■ Defendant next contends that the trial court erred in permitting certain rebuttal testimony. Indianapolis Police Officer John Miller testified during the State's case-in-chief regarding his arrival at the scene of the offense, his investigation, and the defendant's arrest. During this testimony, the State asked Officer Miller about his questioning of a witness at the scene, Diane Lady, wife of the bartender and former wife of the defendant. During Officer Miller's testimony, the State unsuccessfully sought to question Miller regarding statements made by Mrs. Lady at the scene. Defendant objected to the testimony as irrelevant and immaterial. In support of the State's offer to prove, Officer Miller testified in the jury's absence, to the effect that Mrs. Lady told him that "she had told [defendant] not to carry a gun, because she was afraid he would go back to jail."

The trial court sustained the objection, finding that "since it's hearsay it would have to come in on rebuttal if she denies it." The State did not call Mrs. Lady during its case-in-chief, but cross-examined her during her appearance as a defense witness. During direct examination, she testified that the handgun did not belong to the defendant, and that it had been brought into the tavern by a man other than the defendant. She stated that the man came to the bar, offering to sell the weapon for $125.00, and that she then took the weapon and carried it to the opposite end of the bar and asked her husband and the defendant "if it was any good." As they were examining the weapon, according to Mrs. Lady, the police arrived. She testified that she became very upset "[b]ecause I had brought the gun to him. I thought they were arresting him for the gun, and I wanted to explain to them how it ended up down there at the end of the bar." She testified that she told this story to the Officer Miller at the scene. She also testified that during further discussion in the police car, she advised Officer Miller:

> I don't want [defendant] to go to jail over this gun, because I said he didn't have the gun, I had the gun. And I took it down there to show him to buy.

The State called Officer Miller to testify as a rebuttal witness, and permitted him to relate the conversation previously excluded

during the State's case-in-chief. Notwithstanding defendant's contentions to the contrary, we find no error. In view of Mrs. Lady's testimony during the defendant's case, the rebuttal testimony was proper.

### Issue 5—Instructions

Defendant contends that the trial court committed error by refusing two of defendant's tendered instructions. The substance of these instructions would have required the jury to find that conviction of the charged offense required proof that defendant intended to convey or transport the weapon from one place to another and that defendant "intended" to carry a weapon without a license.

Both of these tendered instructions are incorrect statements of law, as we previously discussed in Issue 1 of this opinion.

### Issue 6—Sentencing

Defendant finally contends that the trial court erred in failing to find mitigating circumstances and to sentence defendant under the alternative misdemeanor sentencing provision in Ind. Code § 35–50–2–7. The trial court sentenced defendant to the presumptive sentence of two years imprisonment, suspended one year, and then enhanced the sentence by thirty years pursuant to the finding of habitual offender status. At sentencing, the record shows that the trial court did consider the alleged mitigating and aggravating circumstances, but found neither sufficient to outweigh the other. We find that the trial court did not abuse its discretion in failing to utilize the alternative sentencing provision.

### Conclusion

The conviction of carrying a handgun without a license, a class D felony, is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.