Rusty L. **DONAHOO**, Appellant,

v.

**STATE of Indiana**, Appellee.

No. 62S00–9312–CR–01394.

Supreme Court of Indiana.

Oct. 4, 1994.

Gerald R. Thom, Thom & DeMotte, Jasper, for appellant.

Pamela Carter, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Rape, a Class A felony, for which he received a sentence of fifty (50) years, enhanced by thirty (30) years by reason of his status as a habitual offender, and Criminal Confinement, a Class B felony, for which he received a sentence of twenty (20) years, the sentences to run consecutively.

The facts are: On February 25, 1993, appellant was driving a pickup truck on a rural road in Perry County, Indiana. A heavy snowstorm was in progress and appellant's truck became stuck in front of the residence of B.K., the victim in this case. Appellant and Ray Bolin, his passenger, went to B.K.'s residence seeking help. They borrowed B.K.'s pickup truck but were unsuccessful in freeing their truck. Appellant then went back to B.K.'s home and asked to use the truck to obtain some tools to free his truck. B.K. consented and went with appellant while Bolin stayed with B.K.'s minor children. In a short time, it became apparent to B.K. that appellant was not going in the direction he had indicated but in fact stopped the truck and stated he was going to have sex with her. He struck her several times and used a knife to force her to submit to sex.

After appellant had raped B.K., he tied her hands and feet with shoelaces and drove to her residence but then left and drove down the road until he saw his brother, Will Donahoo, with some other people. Appellant stopped the truck and talked with them. Will Donahoo convinced appellant to leave the truck and B.K. with him. Appellant then left and Will Donahoo drove B.K. to her home. From there, she was taken to the Perry County Hospital and was examined and treated. Appellant later was located with his brother and others. Following his arrest, clothing and other evidence were taken with him to the Perry County jail. Pursuant to court order, hair, saliva, and blood samples were taken from appellant and were transported to a State Police District Laboratory where they were tested.

Appellant claims the trial court erred in permitting various exhibits in evidence by reason of an improper chain of custody. The exhibits involved included the victim's sweat suit, camouflage coveralls, a green plaid shirt, a purple sweater, a brown trash bag, a pair of gloves, a sample kit, a State Police suspect collection kit, and a rape kit. We find no merit to appellant's contention that there was an insufficient chain of custody.

It is true that when exhibits are offered, the State has the burden to show the continuous whereabouts of the exhibits from the time they are acquired until they are presented in court. *Graham v. State* (1970), 253 Ind. 525, 255 N.E.2d 652. This burden is enhanced when the goods in question are fungible. *Gambill v. State* (1985), Ind., 479 N.E.2d 523. However, in the case at bar, the goods in question were not fungible but were items readily identifiable by persons who previously had seen them.

The record reveals the following chains of possession for the various items. Dr. Laura Hazeltine examined the victim, took several specimens from her for purposes of the rape kit. She sealed the kit. The

doctor also took the victim's sweat suit and placed it in a sealed bag. Due to inclement weather, Officer Jerry Belcher of the State Police was unable to go to the hospital to retrieve the victim's clothes and rape kit. Consequently, he called Dr. Hazeltine and instructed her as to how to handle the evidence to preserve the chain of custody.

Dr. Hazeltine placed the rape kit and a bag of clothes in a locked file cabinet in her office. When she left the hospital to return to her home, she locked the rape kit and bag of clothes in the trunk of her car. The following day Officer Belcher arrived at Dr. Hazeltine's residence and obtained the evidence. He kept the evidence in his car until he delivered it to the Indiana State Police Post at Jasper. There it was placed in the evidence locker.

In the meantime, Officer Mark Seifert searched a home where appellant resided and recovered appellant's coveralls, shirt and sweater. Officer Seifert placed the clothes in a trash bag and locked the bag in the trunk of his police car. Later that day, Officer Seifert delivered the bag to Officer Belcher who locked the bag in his police car until he delivered it to the Indiana State Police Post at Jasper. On February 27, 1993, Officer Seifert recovered a pair of gloves from the floor of the victim's truck. On March 1, 1993, the officer gave the gloves to Officer Belcher.

Thereafter, on March 4, 1993, Officer Belcher received a court order to obtain blood and hair samples from appellant. The officer and James Neimeyer, a technician, obtained the samples and placed them in separate sealed envelopes. On April 21, 1993, Officer Belcher obtained additional samples from the defendant and sealed them in a box. Officer Belcher delivered the samples to the Indiana State Police Laboratory at Evansville. Janice Lacey, the State Police serologist, examined the exhibits that needed evaluation. Before she began her analysis, she observed that each exhibit was in a sealed condition. After she completed her analysis, Lacey sealed each exhibit. Each exhibit was delivered to the court in the condition described above and each was identified when placed in evidence.

■ Although the State is not required to show a perfect chain of evidence that would totally exclude any possibility of tampering, *Kennedy v. State* (1991), Ind., 578 N.E.2d 633, under the facts of this case, it stretches credulity to hypothesize even a possibility of tampering with any of the exhibits presented to the trial court. We find that no error occurred in the admission of the exhibits.

■ Appellant claims the trial court erred in admitting State's Exhibits No. 33 and 34, which were documents the State offered to prove appellant's prior convictions in order to establish his status as a habitual offender. Appellant objected to admission of the exhibits on the basis that they were prejudicial to him, that in addition to a rape conviction shown by one of the exhibits, that same exhibit also showed that in the same cause of action he had been charged with committing "the infamous crime against nature," a charge which in Indiana would be described as sexual deviate conduct.

In the first place, the trial on the instant charge had been completed. The evidence to which appellant now complains was introduced during the bifurcated section of the trial in which the State had the burden of establishing that appellant in fact was a habitual offender. Thus, the exhibits could not have prejudiced the trial on the instant charge. Indiana Code § 35-50-2-8 requires the State to prove two prior unrelated convictions in order to establish the status of habitual offender. The State in order to sustain its burden of proof placed in evidence the fact that appellant had been convicted in Hopkins County, Kentucky of the felony of second-degree burglary which was committed in November of 1978 and he was sentenced in May of 1979 to the Kentucky Department of Correction.

For the second charge, they presented evidence that in February of 1983, in the Fifth Judicial District of Idaho, appellant was convicted of rape and was committed to the Department of Correction on February 1, 1983. That exhibit further showed that as a part of the charging instrument in that cause appellant also was charged with both oral and anal intercourse with the victim. It is

true that the State would have made its case to merely show the Idaho conviction for rape. However, the showing that the same cause contained three counts, one for oral sex and one for anal sex was merely surplusage as far as the necessities of the State proof were concerned. *Golden v. State* (1985), Ind., 485 N.E.2d 51. We also have held that proof of the crime charged is admissible even if that evidence also tends to prove the accused commission of an uncharged crime. *Mc-Manus v. State* (1982), Ind., 433 N.E.2d 775.

In the case at bar, the Idaho charge was a single cause of action with three counts. We see no error in the admission of the entire record in that cause. We further would point out that we cannot perceive reversible error here in the face of the overwhelming evidence which supported the jury's finding that two prior felonies in fact had been committed. *Howell v. State* (1980), 274 Ind. 490, 413 N.E.2d 225. No reversible error was committed in the admission of the entire Idaho record.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and SULLIVAN, JJ., concur.