JIMMY PASCHALL *v.* STATE OF INDIANA.

[No. 272A108. Filed June 15, 1972.]

*John C. Cox, John G. Bunner,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Stephen Cuthbert,* Deputy Attorney General, for appellee.

LYBROOK, J.—Appellant was charged by affidavit with the offense of First Degree Burglary, and was convicted by a jury of the offense of "Entering House to Commit a Felony." He was sentenced to the Indiana Reformatory for a term of one to ten years.

Defendant complains of three errors in the trial: (1) admission of fingerprint evidence in violation of Fifth Amendment rights, (2) admission of fingerprint evidence without proper showing of chain of custody, and (3) insufficiency of the evidence to support the verdict.

The evidence most favorable to the state is that on May 17, 1971, Mrs. T. K. Schmitt returned to her home and found a glass broken in both the front and side doors and a television set missing. The Evansville Police Department lifted a partial thumb print from the *inside* doorknob of the side door. The thumbprint matched one of the defendant taken after an arrest on July 2, 1971, for a different offense.

At the trial defendant objected to the admission of the fingerprints on the grounds that he was not advised of his constitutional rights prior to the fingerprinting.

Our Supreme Court has dealt with the lack of "Miranda" warnings prior to obtaining physical evidence. In *Heichelbech v. State* (1972), 258 Ind. 334, 281 N. E. 2d 102, the court dealt with a sobriety test, holding:

> "We do not believe the evidence elicited by the tests given to Defendant could be regarded as anything but 'real or physical evidence' under the principles expressed in *Schmerber,* (supra) and we hold that the failure to advise an accused, held in custody, of his Fifth Amendment rights does not preclude the utilization of real or physical evidence then obtained as opposed to that which may be directly or indirectly testimonial in character."

In *Schmerber* v. *California* (1966), 384 U.S. 757, the court made the distinction between physical and testamentary evidence.

"It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. *Boyd* v. *United States*, 116 U.S. 616. [6 S. Ct. 524, 29 L. Ed. 746.] On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it."

In accord with these authorities we hold that the fingerprints of defendant are physical evidence and not violative of Fifth Amendment protections even though taken without "Miranda" warnings.

Defendant's second contention is that the state failed to show a proper chain of custody of the fingerprint taken from the doorknob.

The testimony on which the defendant bases his objection is:

"Q. Officer, how do you know that is the print you lifted out there on Washington Avenue from that alone?

A. Your honor, from that print alone, I have never ever lifted another print that had a big long fishtail design on it like this has. I remember this print very specifically.

Q. And you are telling the court and this jury that this is the print you lifted at 2043 Washington Avenue in a house there owned by Talitha K. Schmitt?

A. Most certainly."

\* \* \*

"Q. Can prints fall out of these jackets?
A. Certainly, but it is highly improbable.

Q. Can they be mixed up in other jackets?
A. Not too likely, if you are working on a ———

Q. I am asking, can they?
A. I suppose they could.

Q. And there is no stapled identification this jacket to this proposed exhibit?
A. No, sir.

Q. So an innocent misfiling could occur, could it not, officer?
A. Oh, anything—it certainly could occur, yes.

\* \* \*

"Q. There is no question in your mind whatsoever that this print came from the scene?
A. Absolutely not."

This testimony supports an inference that the prints could *possibly* have been misfiled.

However, a showing of proper custody need not rule out *all* possibility of tampering.

In *Guthrie* v. *State* (1970), 254 Ind. 356, 260 N. E. 2d 579, the court stated:

". . . all possibility of tampering need not be excluded; upon reasonable assurance that the exhibit has passed through the various hands in an undisturbed condition its admission is proper and any remaining doubts go to its weight only." [Citations omitted.]

In the case at bar, as well as in *Johnson* v. *State* (1971), 256 Ind. 497, 266 N. E. 2d 57, *Guthrie* v. *State* (1970), 254 Ind. 356, 260 N. E. 2d 579, and *Spright* v. *State* (1970), 254 Ind. 420, 260 N. E. 2d 770, the evidence was shown to be in the custody of the police department identification section during the time in question.

The nature of the evidence bears on the custody require-- ments as well and as the court said in *Guthrie* v. *State, supra:*

"Concededly the police could have exercised a greater degree of care to insure that the capsule was not tampered with. However, there is a complete lack of evidence which suggests the remotest suspicion that anyone *did in fact tamper with the evidence.*" (Our emphasis.)

* * *

"Further the nature of the evidence here involved, slides of vaginal smears, is not the type that could easily be tampered with or substituted."

In this case we have custody by the police, of fingerprint evidence which is of such a nature as to make tampering difficult, and only a remote possibility of tampering or substitution. The officer positively identified the thumbprint and remembered it because of its unique character. The evidence was properly admitted.

Defendant further contends that there was insufficient evidence to support his conviction. Defendant's fingerprint on the inside doorknob of the burglarized house is sufficient evidence.

The rule is stated in *Shuemak* v. *State* (1970), 254 Ind. 117, 258 N. E. 2d 158, a virtually identical case.

"Under the circumstances it is universally recognized a finger, palm or bare footprint found in the place where a crime was committed may be sufficient proof of identity."

We therefore conclude that the judgment of the trial court should be affirmed but that defendant's sentence be modified.

A recent line of cases brings us to the conclusion that the maximum sentence for Entering to Commit a Felony is not less than one nor more than five years. This is a lesser included offense under the Second Degree Burglary statute, IC 1971, 35-13-4-4, § 10-701(b), (Burns' 1956), which carries not less than two nor more than five years. *Landaw* v. *State* (1972), 258 Ind. 67, 279 N. E. 2d 230; *Easton* v. *State* (1972), 258 Ind. 204, 280 N. E.

2d 307; *Heathe* v. *State* (1971), 257 Ind. 345, 274 N. E. 2d 697; *Hobbs* v. *State* (1969), 253 Ind. 195, 252 N. E. 2d 498.

In accordance with the above cases, this cause is remanded to the trial court with the direction to enter a corrected judgment for commitment nunc pro tunc for not less than one nor more than five years.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported in 283 N. E. 2d 801.