CARL LEE WELLS *v.* STATE OF INDIANA

[No. 3-977A238. Filed December 27, 1978.]

*Harriette Bailey Conn., [Mrs.],* Public Defender of Indiana, *Robert W. Hammerle, Bobby Jay Small, David P. Freund,* Deputy Public Defenders, for appellant.

*Theodore L. Sendak,* Attorney General of Indiana, *Robert J. Black,* Deputy Attorney General, for appellee.

STATON, J. — A jury found Carl Lee Wells guilty of First Degree Burglary

and he was sentenced to the Indiana Department of Corrections for a period of not less than ten (10) nor more than twenty (20) years. His appeal to this Court is based upon three contentions of error:

(1) The chain of custody established by the State was not sufficient to justify the admission of fingerprint evidence.

(2) The court erred in instructing the jury that possession of stolen property may be "considered as evidence of participation in the unlawful taking" because theft is not an element of the crime with which he was charged. (State's Instruction No. 4)

(3) The court erred by failing to instruct the jury on the definition of circumstantial evidence. (State's Instruction No. 5)

We find no error, and we affirm.

## I.

## Chain of Custody

Wells objects to the admission of fingerprint lifts used as exhibits and related expert testimony on the basis that the State failed to establish a proper chain of custody. The fingerprints were obtained at the scene of the burglary by South Bend.Police and identified as Wells' fingerprints at trial by witness Thelma O'Donnell, a State Police fingerprint expert. Wells maintains that the trial record reveals two "large and unexplained gaps" in the chain of custody and an "extremely high" possibility that the prints were altered prior to trial.

The facts concerning the chain of custody of the fingerprints are as follows: On June 21, 1976, police officer Larry Lee Randt obtained lifts of six latent fingerprints at the scene of the burglary. Randt covered the surface portion of each of the six lifts with clear adhesive plastic and attached a small piece of white tape to each lift. Randt then wrote his initials "LLR" and the numerical date "6-21" on the tape affixed to each lift.

Randt then gave the lifts to Sergeant Thomas V. Kazmierczak, who placed them in a manila envelope. Kazmierczak closed the envelope and took the prints to the police station, where he attached an identification label to the envelope which described its contents. Sergeant Kazmierczak testified that he then turned the envelope in to the police

laboratory. Sergeant Robert Bella, however, testified that Kazmierc-zak "must have turned them (the prints) in to the property room" in accordance with the standard procedure for handling evidence.

On June 23, Bella picked up the manila envelope containing the prints from the property room and took it to the laboratory, where he left the envelope and prints. The record does not reveal exactly when Bella regained possession of the fingerprints; the evidence does establish, however, that Bella enclosed the manila envelope and prints within a second envelope which was postmarked "June 25" in South Bend and delivered to Thelma O'Donnell's desk at State Police headquarters in Indianapolis on June 29.

O'Donnell testified that she opened the envelope and found the manila envelope containing the six fingerprint lifts. Except during those periods of time when she was analyzing the fingerprints, O'Donnell kept the lifts in her own locked cabinet at Indiana State Central Records in Indianapolis. O'Donnell transported the fingerprint lifts to St. Joseph County Superior Court for the trial of Wells. At trial, Randt, Kazmierc-zak, Bella, and O'Donnell all identified the prints by the initials "LLR" located on each lift.

Wells relies upon the State's failure to establish whether the prints were in the property room or laboratory between June 21 and June 23 to bolster his argument. Also, following Bella's delivery of the prints to the laboratory on June 23, the State failed to introduce either testimony of laboratory personnel who handled the lifts or evidence to indicate exactly when Bella regained possession of the lifts. Wells contends that these two periods constitute "complete and unexplained" breaks in the chain of custody such as existed in *Graham v. State* (1970), 253 Ind. 525, 255 N.E.2d 652.

We disagree. In *Graham,* the State failed to produce any evidence whatsoever regarding the whereabouts of the exhibit for a six day period. Here, the State has introduced evidence which clearly indicates that the fingerprint lifts were in the custody of police at all times. If evidence regarding the chain of custody of an exhibit strongly suggests its continuous whereabouts, the exhibit is admissible so long as the State provides " 'reasonable assurances' that

the exhibit has passed through the various hands in an undisturbed condition." *Rinard v. State* (1976), 265 Ind. 56, 351 N.E.2d 20, 22; *See also Kolb v. State* (1972), 258 Ind. 469, 282 N.E.2d 541; *Guthrie v. State* (1970), 254 Ind. 356, 260 N.E.2d 579.

Wells maintains that the evidence indicates an "extremely high" possibility that the fingerprint lifts were altered while in the possession of the police. Wells bases this contention on the fact that the tape bearing Randt's initials was removable and the fact that four of the fingerprints were blurred.

The State's burden to demonstrate a proper chain of custody does not extend so far that the State is required to eliminate every conceivable opportunity for tampering. The mere possibility that an exhibit may have been tampered with does not make the exhibit inadmissible. *Jones v. State* (1973), 260 Ind. 463, 467, 296 N.E.2d 407, 409. As Justice Hunter explained in *Jones,* "We are not here concerned with absolute certainty but with probabilities." *Id.*

We do not find it probable that the fingerprint exhibits were the subject of tampering, substitution, or mistake. No evidence supports the speculation of Wells that the tape bearing Randt's initials was removed from some or all of the lifts, nor is there any indication that all six fingerprints were of perfect clarity when taken at the scene of the burglary. Fingerprint expert O'Donnell testified that she saw no evidence of alteration on any of the six exhibits[1], and Randt identified the lifts as those which he took at the scene.

We hold that the chain of custody established by the State was sufficient to justify the admission of the fingerprint lifts.

---

1. We also recognize the validity of the conclusion reached in *Paschall v. State* (1973), 152 Ind.App. 408, 283 N.E.2d 801, wherein the court noted that the nature of particular fingerprint evidence affects the likelihood of tampering. *Id.* at 804. In *Paschall,* the print was identified by the unique character of the fingerprint itself. Here, however, Officer Randt identified the fingerprints by his initials located on adhesive tape attached to the fingerprint lifts. This factual distinction created a greater likelihood of tampering in Wells' case, and so we have not relied on *Paschall* as authority for our decision.

## II.

### Jury Instructions

Wells contends that the trial court erred when it gave State's instructions numbered 4 and 5. Instruction No. 4 reads as follows:

"Possession of recently stolen property may be considered by you as evidence of participation in the unlawful taking."

On appeal, Wells reasserts the objection to Instruction No. 4 which he raised in the trial court:[2]

"The defendant objects to the giving of the State's tendered Instruction No. 4 for the reason that the defendant in this case is charged with the crime of first degree burglary and not with theft. And State's Instruction No. 4 purports to instruct the jury that possession of stolen property is evidence of theft. Therefore, it is irrelevant to the issues in this case and can only lead to the confusion on the part of the jury since one of the elements of first degree burglary is not actual taking of property."

The elements of the crime of First Degree Burglary include (1) the breaking and entering (2) into a dwelling house or place of human habitation (3) with the intent to commit a felony therein, or to do an act of violence or injury to any person. IC 1971, 35-13-4-4 (Burns Code Ed.).[3] The State's claim that Wells was guilty of First Degree Burglary was predicated upon evidence that Wells broke into the residence of Kenneth Carter and committed a felony by taking six guns which belonged to Carter. The theft of the guns constituted the "felony therein" or third element of the First Degree Burglary charge. The instruction was clearly not irrelevant to the issues before the jury. *Schweigel v. State* (1964), 245 Ind. 6, 10, 195 N.E.2d 848, 850.

---

2. On appeal, Wells raises for the first time other specific reasons for his objection to State's Instruction No. 4. We do not address those arguments. An appellant's error on appeal is restricted to the specific reasons stated in his objection before the trial court. *Pfeifer v. State* (1972), 152 Ind.App. 315, 318, 283 N.E.2d 567, 569.

3. The burglary for which Wells was convicted occurred on June 21, 1976. IC 35-13-4-4 was repealed effective October 1, 1977, and replaced with Ind.Code Ann. § 35-43-2-1 (West 1978).

The State's Instruction No. 5 reads as follows:

"Conviction of [the] crime of burglary may be sustained upon circumstantial evidence."

Wells tendered the following objection to the trial court:[4]

"The defendant objects to the Court giving State's tendered Instruction No. 5 for the reason that there is no definition in the instruction or in any of the instructions to be given by the Court of circumstantial evidence. And therefore, the jury does not have in front of it the difference between circumstantial evidence and direct evidence. That is all."

Simply objecting to an instruction as an incomplete statement of law will not preserve the question for appeal. A party must also tender an instruction which correctly states the more complete statement of law desired. *Mireles v. State* (1973), 261 Ind. 64, 67, 300 N.E.2d 350, 351. Wells' failure to tender an instruction to the trial court defining "circumstantial evidence" constitutes a waiver of his right to raise this issue on appeal.

Affirmed.

Garrard, P.J., concurs;

Chipman, J. (by designation), Concurs.

NOTE—Reported at 383 N.E.2d 487.

---

4. Wells again raises specific reasons for his objection which he did not present to the trial court. We do not address those arguments for the reason enunciated in footnote 1, *supra*.