David A. CURRY, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 2–582A133.

Court of Appeals of Indiana,
Second District.

Oct. 4, 1982.

Nancy L. Broyles, McClure, McClure & Kammen, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant-appellant David A. Curry (Curry) appeals his conviction for burglary,[1] claiming the evidence was insufficient because the only evidence of guilt was his fingerprints on a broken window.

We affirm.

## FACTS

The facts in this case are essentially undisputed. At approximately 4:20 a. m. on July 15, 1981, police officers responded to a silent alarm at the Economy Electric Supply Company in Indianapolis. Although the building had been securely locked by the warehouse foreman at 7:00 p. m. on July 14, the officers discovered that the front door had been kicked in and the door's glass window broken out. Officer David Coffman (Coffman) discovered latent fingerprints on a piece of broken glass that was still in the molding. Two fingerprints were identifiable, one on each side of the glass. Coffman placed the fingerprints on a fingerprint card, indicating on a diagram on the card which print came from which side of the glass.

A fingerprint expert with the Indianapolis Police Department testified that the latent fingerprints found at the scene of the crime matched those of Curry. The expert further testified that the fingerprint card delivered by Coffman showed the print of a right ring finger on the inside of the glass and the print of a right thumb on the outside. From this information, he concluded that the glass was touched after it was broken.

The case was tried to the court on January 5, 1982. When defense counsel's motion for judgment on the evidence was denied following presentation of the State's evidence, the defense rested, and Curry was found guilty of Class C burglary.

## ISSUE

We have consolidated Curry's arguments into one dispositive issue:

Was the evidence sufficient to support the conviction?

## DECISION

PARTIES' CONTENTIONS—Citing *Nichols v. State,* (1973) 157 Ind.App. 605, 301 N.E.2d 246, Curry argues that mere evidence of fingerprints in a place accessible to the public is insufficient to support the conviction for burglary. The State counters that fingerprints found in the place where a crime was committed is sufficient proof of identity and emphasizes that expert testimony demonstrated Curry's fingerprints were not legitimately placed on the broken window.

CONCLUSION—The fingerprint evidence was sufficient to support Curry's conviction because expert testimony provided additional evidence linking Curry with the crime.

▪ Under Ind.Code 35–43–2–1,

"A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony."

And although intent to commit a felony may be inferred from circumstantial evidence, *Lisenko v. State,* (1976) 265 Ind. 488, 355 N.E.2d 841; *Bellamy v. State,* (1975) 165 Ind.App. 27, 330 N.E.2d 377, the evidence presented must establish more than a mere suspicion of guilt. *Manlove v. State,* (1968) 250 Ind. 70, 232 N.E.2d 874; *Nichols, supra.*

▪ Curry's presence at the burglarized premises was established by the fingerprint evidence. But did he have a felonious intent? Was he there at the time of the break-in?

The State cites several Indiana cases for the proposition that fingerprints found in the place where a crime was committed is sufficient proof of a burglar's identity. This is too sweeping a statement. Thus, in *Nichols, supra,* we reversed a burglary conviction which was supported solely by evidence of fingerprints found on a tool box

---

1. Ind.Code 35–43–2–1.

inside a public business and on the glass in the front door of the building. The reason for the reversal was that there was a distinct possibility that the defendant could have legitimately entered the premises and left his fingerprints during business hours.

That decision was consistent with both earlier and subsequent cases in which fingerprint evidence was held sufficient to support a conviction. For example, in *Shuemak v. State,* (1970) 254 Ind. 117, 258 N.E.2d 158, a vending machine was forced open, and the defendant's fingerprints were found on the machine's coin box. The coin box was *inside* the machine and not accessible to the defendant prior to the break-in. Similarly, in *Paschall v. State,* (1972) 152 Ind.App. 408, 283 N.E.2d 801 the defendant's fingerprints were found in a private home, not readily accessible to the public. And in *Scott v. State,* (1982) Ind., 434 N.E.2d 86 and *Powell v. State,* (1974) 160 Ind.App. 557, 312 N.E.2d 521, fingerprint evidence was sufficient to support a conviction when it was established that the defendants could not have had authorized access to the buildings at the time of the crime.

Thus, we must know whether the State's evidence demonstrated more than mere presence on Curry's part; that is, did the evidence show that Curry's prints were not made in a legitimate manner so that felonious intent could be inferred? We believe it did.

The expert's testimony at trial indicated that Curry's fingerprints were not made in a legitimate manner:

"Q. Now, were you able to determine how those prints were situated in relation to one another?

A. The only information I've got is what is on the card. The information on the card would indicate that A, which is the right ring finger, was on the inside of a piece of glass, and B which was the right thumb, was on the outside of the glass.

Q. Now, in your opinion, Officer, how would those prints get on opposite sides of the glass?

A. If the prints were situated as they're shown here, in opposites [sic] of each other, *the glass would've had to been touched after it was broken.*"

*Record* at 91 (emphasis added). And although the officer admitted the fingerprints could have been placed on the glass before it was broken, his testimony renders that possibility improbable:

"Q. Now, Officer, based upon the diagram that you saw earlier and the information obtained on the latent print card, is there any possible way that those fingerprints could've been put on there and been opposite each other?

A. *Other than being touched after it was broken the only way that I could see that it would've happened is if someone had placed their thumb print on the outside of the glass and then gone around to the inside and put their hand upside down to place the other finger and the partials across from it.*"

*Record* at 98 (emphasis supplied).

This testimony, then, provided evidence from which the trier of fact could infer that Curry broke the window and entered[2] with felonious intent because his fingerprints were on both sides of the glass in such juxtaposition to each other as to reasonably infer the breaking and entering occurred simultaneously. In *Nichols, supra,* the fingerprints were not established to be on both sides of the *same* piece of broken glass, but apparently were on one side of a piece of front door glass and a tool box some distance away—a meaningful distinction. *Nichols* is thus one step removed from this case.

Our conclusion that a burglary conviction is supported by evidence of fingerprints found at the scene of a crime, intertwined with evidence supporting a reasonable in-

---

**2.** Placing his hand through the opening was an entry. *See Anez v. State,* (1980) Ind.App., 408 N.E.2d 1315; *McCormick v. State,* (1978) Ind. App., 382 N.E.2d 172.

ference that the prints were not made in a legitimate manner, is in line with the cases of this state and the general rule in other jurisdictions. *See generally* Annot., 28 A.L. R.2d 1115 (Later Case Service at 138–52 (1981)). That such additional evidence was provided by the expert's testimony in this case is supported by decisions from other jurisdictions. *See People v. King,* (1980) 88 Ill.App.3d 548, 43 Ill.Dec. 937, 410 N.E.2d 1070; *State v. Turnipseed,* (1980) Minn., 297 N.W.2d 308; *State v. Lane,* (1973) Mo.Ct. App., 497 S.W.2d 207.

Affirmed.

SHIELDS and SULLIVAN, JJ., concur.