Alvin Wayne STAGGERS, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 683S215.

Supreme Court of Indiana.

May 8, 1985.

Susan K. Carpenter, Public Defender, C.H. Gardner, Deputy Public Defender, Indianapolis, for appellant (defendant below).

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for Appellee (plaintiff below).

PRENTICE, Justice.

Following a trial by jury, Defendant (Appellant) was convicted of burglary, a class B felony, Ind.Code § 35–43–2–1 (Burns Supp.1984) and robbery, a class C felony, Ind.Code § 35–42–5–1 (Burns Supp.1984). He was sentenced to eighteen (18) years imprisonment upon the burglary conviction

and eight (8) years imprisonment upon the robbery conviction, said sentences to be served consecutively. His direct appeal presents five (5) issues for our review, as follows:

(1) Whether the trial court erred in granting, on the first day of trial, the State's motion to compel fingerprint exemplars;

(2) Whether the trial court erred in permitting the testimony of two police officers, inasmuch as they had not been listed as witnesses by the State prior to the first day of trial;

(3) Whether the trial court erred in admitting into evidence State's Exhibits 4, 5, and 6, two latent fingerprints and the envelope which contained them;

(4) Whether the trial court erred in overruling the Defendant's objection to the testimony of F.B.I. Agent Bell on redirect examination;

(5) Whether the evidence was sufficient to sustain the convictions.

The record discloses that on April 30, 1982, between 10:30 and 10:40 p.m., Denise Eck and Steven Hall entered her apartment in South Bend, Indiana and noticed a light on in the bedroom which Eck had turned off before leaving the apartment earlier in the day. Entering the bedroom, they discovered that a storm window and a screen from the bedroom window were propped against the bed and that the drawers had been ransacked. As they looked around the apartment, a black man stepped out of a closet and said, "Move, and you're dead." The intruder then took Hall's wallet and moved toward the front door where he hit Hall and ran out of the apartment, carrying a pillow case. Eck telephoned the police who subsequently arrested the Defendant.

### ISSUE I

■ On the first morning of trial, the State filed its "Motion to Compel Fingerprint Exemplars." Although the Defendant's fingerprints had been taken on at least one occasion previously, the defense refused to stipulate that those prints had been taken in conjunction with the arrest for the instant offenses. The trial court granted the motion, and the Defendant argues that in so doing it denied him the opportunity to prepare adequately for the introduction of the fingerprints.

The factual background in this case is nearly identical to that in *Scott v. State*, (1982) Ind., 434 N.E.2d 86, 88, wherein the appellant objected, at trial, to the admission of a set of fingerprints which had been provided to defense counsel during pretrial discovery and which identified the appellant as a person who was in custody for an offense unrelated to the instant one. The court sustained the objection and then granted the State's motion requiring the appellant to provide new finger and palm prints. It did, however, grant a motion for a continuance. We found no error in the trial court's ruling. Neither do we find error here. If, in fact, the Defendant needed additional time to prepare his case, he should have requested a continuance. This he did not do.

### ISSUE II

■ Although pursuant to a pretrial discovery order, the State was required to list the names of all of the witnesses it intended to call, on the first and second days of trial the State filed additional witness lists, each bearing the name of a police officer whose testimony was to help establish the chain of custody for the latent fingerprints which the State sought to introduce into evidence. The trial court granted both requests, and Defendant assigns such rulings as reversible error.

In *Lloyd v. State*, (1983) Ind., 448 N.E.2d 1062, the prosecutor, on the third day of trial, informed defense counsel that he planned to call an additional witness, one who had previously testified at a hearing, but whose name was not on the witness list. The trial court granted an overnight continuance, and we found no error in its refusal to impose other sanctions requested by the appellant. We observed:

"[U]nless the State's action in violating the discovery order is in such bad faith

or is so misleading that the only way to avoid the denial of a fair trial for the defendant is to exclude the State's evidence, a continuance is the most appropriate remedy. The choice of the remedy lies within the discretion of the trial judge and will not be overturned unless that discretion has been clearly abused." (citations omitted).

*Id.* at 1067

In the case at bar, with respect to the addition of the first police officer to the witness list, defense counsel specifically stated that he had no objection. With respect to the second named officer, the State indicated that his name had been inadvertently omitted from the witness list, but that the defense was familiar with his role in the case inasmuch as his name appeared on the back of the property receipt. Defendant did not argue at trial that he was surprised by the addition of these witnesses or that he was unprepared for their testimony. Neither did he request a continuance. Under these circumstances, we find no abuse of discretion in the trial court's ruling.

## ISSUE III

■ Defendant argues that inasmuch as an insufficient chain of custody was established, the trial court erred in admitting into evidence State's exhibits 4, 5, and 6, latent fingerprints found at the scene of the crime and the envelope which held them. Officer Gnoth recovered the prints from a box found on Eck's dresser and gave them to Officer Markovich at approximately 11:15 p.m. on April 30, 1982. Markovich turned them over to Officer Laurita at 4:00 a.m. on May 1, 1982. Laurita placed the envelope in the property room at 6:30 a.m. on May 1, 1982, and Officer Verash removed them from the property room on May 3, 1982. On May 25, Officer Brassell obtained the prints from the property room and sent them by registered mail to the F.B.I. Defendant argues that the State failed to show the whereabouts of the prints from 4:00 a.m. to 6:30 a.m. on May 1,

1982 or what was done with the prints between May 3 and May 25, 1982.

In *Dier v. State*, (1982) Ind., 442 N.E.2d 1043, 1046 we observed:

"The mere possibility of tampering will not render evidence inadmissible. *Starkey v. State*, (1977) 266 Ind. 184, 361 N.E.2d 902. In the case of non-fungible goods, it is sufficient if the chain of custody strongly suggests the whereabouts of the exhibits at all times. *Gurley v. State*, (1976) 264 Ind. 552, 348 N.E.2d 16. All evidence is not subject to the chain of custody rule. *Woodard v. State*, (1977) 267 Ind. 19, 24, 366 N.E.2d 1160, 1164. 'If the offered item possesses characteristics which are fairly unique and readily identifiable, and if the substance of which the item is composed is relatively impervious to change, the trial court is viewed as having broad discretion to admit it merely upon the basis of testimony that the item is the one in question and is in a substantially unchanged condition.' *McCormick on Evidence*, 2nd Ed. § 212, p. 527. *In accord Duncan v. State*, (1980) [274] Ind. [144], 409 N.E.2d 597, 601."

Therein, State's exhibit No. 9 was a fingerprint impression which had been lifted from a door at the scene of the crime. We stated that there must be some showing that the prints exhibited were, in fact, the ones retrieved from the crime scene. In that case the print was lifted and mounted onto a white card. On the card, an officer noted a number and the location from which the print was taken. He placed the card, along with other items, into an envelope upon which notations were made to identify the case and which was then sealed and taken to the Technician Unit Office where it was kept until the following morning when it was released to the supervisor of the fingerprint agency for the police department. Even though there was no accounting for the exhibit's whereabouts at all times, we found a sufficient chain of custody had been established.

"[B]oth parts of the exhibits bore distinctive markings from the beginning. Wit-

ness Sohl testified that they were the print lifted by him and the photograph which he had taken of it; and Witness Elder testified that they were the items compared by him with the defendant's fingerprint card, exhibit 4. Upon this record and the absence of any indication that Exhibit 9 had, in some manner, been falsified, there is no basis for excluding the fingerprint identification evidence. Defendant has only pointed out some innocuous irregularities and the possibility that the evidence might have been falsified, and that is insufficient." (citation omitted).

*Id.* at 1047.

In the case at bar, Officer Gnoth identified the exhibits as fingerprints which he had lifted at the scene of the crime and placed upon cards upon which he had made various notations. He testified that the exhibits were in substantially the same condition as when he prepared them and further stated, with regard to the prints, that if one attempted to tamper with them, he would have to remove some tape which would "separate the cardboard." There was no indication of any such tampering. Under these circumstances, we find that the State established a sufficient chain of custody.

### ISSUE IV

■ On redirect examination, F.B.I. Agent Bell, the witness who identified the latent fingerprints found at the scene of the crime as those of the Defendant, was asked whether he thought exhibits 5 and 6, the latent fingerprints, could have been tampered with. Defendant objected, but the trial court overruled his objection, and Bell testified that, in his opinion, they had not been the subject of tampering. Defendant concedes that the scope of redirect examination is within the discretion of the trial court, *Dooley v. State,* (1981) Ind., 428 N.E.2d 1, 6, but, nonetheless, contends that the court's ruling constituted an abuse of discretion and denied him a fair trial in that Bell's testimony was beyond the scope of his cross-examination and the "line of ques-

tioning on redirect examination, called undue emphasis to the validity and sufficiency of such evidence."

Although the question and the response it evoked were beyond the scope of cross-examination and, therefore, should not have been allowed, Defendant has not shown how he was harmed by this testimony. Several other witnesses had testified that the exhibits had not been altered in any way. We find no reversible error.

### ISSUE V

■ We note at the outset our standard of review upon a claim of insufficient evidence:

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses."

*Loyd v. State,* (1980) 272 Ind. 404, 407, 398 N.E.2d 1260, 1264 *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Here, Officer Reynolds testified that he had seen the Defendant near the scene of the crime at approximately 10:34 p.m. on April 30, 1982. In addition, the description of the intruder given by Eck and Hall matched the description of the Defendant. Most significantly, however, the Defendant's fingerprints were found on a box in Eck's bedroom.

■ Defendant challenges this evidence by asking us to reweigh the evidence and to judge the credibility of the witnesses, something we will not do. In addition, he claims that the State failed to exclude the possibility that he had legitimately left his fingerprints in Eck's apartment. His argument, however, is without merit. This is not a case such as *Nichols v. State,* (1973) 157 Ind.App. 605, 610, 301 N.E.2d 246, 249, wherein the Court of Appeals reversed a

conviction for second degree burglary of a business because the only evidence connecting the appellant with the burglary was his latent fingerprints on the door and on a tool box located inside a public area of the business. The court found that there was a possibility that the appellant could have legitimately entered the premises and left his fingerprints during business hours. Unlike *Nichols,* however, this case involves a private dwelling. The article upon which Defendant's fingerprints were found was a plastic shoe box in which Eck kept scarves. The box was ordinarily kept in a dresser drawer, but, after the burglary, it was found on top of her dresser. Eck testified that she did not know the Defendant and that she had never given him permission to enter her apartment. Inasmuch as the box was not in a public place and was not lawfully accessible to the Defendant prior to the burglary, there is only one reasonable inference which may be drawn—the Defendant left his fingerprints after breaking into Eck's apartment and while ransacking her dresser drawers.

This case is similar to *Scott v. State,* (1982) Ind., 434 N.E.2d 86 and *Paschall v. State,* (1972) 152 Ind.App. 408, 412, 283 N.E.2d 801, 804. In *Scott,* the evidence connecting the appellant with the burglary and rape was two latent palm prints found on a bathroom wall and a latent fingerprint found on a screen which had been removed from the bathroom window. There the victim stated that she had never authorized the appellant to enter the premises. This and the fact that the prints were lifted at the place of entry into the residence was sufficient to sustain the convictions. In *Paschall,* the Court of Appeals affirmed a conviction for first degree burglary when the only evidence to support the conviction was the appellant's fingerprint on the inside doorknob of the burglarized house.

The evidence in the case at bar was sufficient to sustain the conviction. *See also Shuemak v. State,* (1970) 254 Ind. 117, 119, 258 N.E.2d 158, 159; *Curry v. State,* (1982) Ind.App., 440 N.E.2d 687, 689; *Pow-ell v. State,* (1974) 160 Ind.App. 557, 559, 312 N.E.2d 521, 522 (*transfer denied* ).

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PIVARNIK, JJ., concur.