**Rodney EVANS, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

**No. 2–985A286.**

Court of Appeals of Indiana,
Second District.

June 4, 1986.

Aaron E. Haith, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Marguerite M. Sweeney, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

Defendant-appellant, Rodney Evans (Evans), appeals his convictions of burglary and theft contending the evidence is insufficient to support his convictions.

Our standard of review in sufficiency claims is well-established. We neither weigh the evidence nor judge the credibility of the witnesses, but look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105 (1980). We will affirm if there is substantial evidence of probative value to support the fact finder's conclusion the defendant is guilty beyond a reasonable doubt. *Jones v. State* (1983), Ind., 456 N.E.2d 1025.

The record reveals the victim, Frankie Nolden, left his home at 10:00 or 10:30 in the morning. When he returned at 2:00 or 2:30 in the afternoon, Nolden noticed the garage door was not fastened as he had left it and a window on the alley side of the garage had been broken. The garage was separated from the alley by a fence with a gate. Several items were missing from the garage. Broken glass pieces found outside the garage revealed a latent fingerprint which was later identified as belonging to Evans. Gary Sharp, a companion of Evans's, testified he usually plays basketball

with Evans each day at one of two playing sites which are both within blocks of Nolden's garage. The missing items were never recovered or linked in any way to Evans.

Evans contends the evidence is insufficient to prove, beyond a reasonable doubt, he committed either burglary or theft. Citing *Nichols v. State* (1973), 157 Ind.App. 605, 301 N.E.2d 246, Evans argues the mere evidence his fingerprints were found on the outside of the burglarized garage is insufficient to identify him as the burglar and thief. In *Nichols*, defendant's latent fingerprints were found on a tool box inside a place of business and on broken glass near the front door. The court held the presence of the defendant's fingerprints in places which may have been accessible to him as a business invitee or as an employee was insufficient to prove the defendant was the individual who broke and entered the building with the intent to commit a felony. 157 Ind.App. at 609–10, 301 N.E.2d at 249.

Our appellate courts have held fingerprint evidence alone may be sufficient to establish the identity of the burglar. However, in the Indiana decisions affirming burglary convictions where identification of the offender is based solely on fingerprint evidence, the location of the defendant's fingerprints provided evidence from which the trier of fact could reasonably conclude the defendant was the individual who not only forcibly entered the structure, but did so with a felonious intent.[1] Fingerprints located inside a private dwelling which the defendant did not have permission to enter, on an object not legitimately accessible to the defendant prior to the burglary, and on both sides of a piece of broken window glass when the prints were made after the glass was broken have been held to satisfactorily support this conclusion.

In *Scott v. State* (1982), Ind., 434 N.E.2d 86, a burglary and rape conviction was affirmed based upon identification evidence consisting of three of the defendant's latent palm and fingerprints inside the victim's home. The court held the prints, inside a dwelling the defendant did not have permission to enter, reasonably supported the convictions. 434 N.E.2d at 90.

The defendant's fingerprint in *Shuemak v. State* (1970), 254 Ind. 117, 258 N.E.2d 158, was found on a forcibly opened vending machine's coin box. The court held the defendant's fingerprint on the coin box, not accessible to him prior to the break in, was sufficient to establish, beyond a reasonable doubt, his identification as the burglar. 254 Ind. at 119, 258 N.E.2d at 159.

Similarly, in *Curry v. State* (1982), Ind. App., 440 N.E.2d 687, latent fingerprints, matching those of the defendant, were found on each side of a piece of broken glass still in the molding of the burglarized business's door. A fingerprint expert concluded, from the position of the fingerprints, the glass was touched after it was broken. In affirming Curry's conviction based upon that evidence, this court observed the nature of the fingerprint evidence must establish more than the mere presence of the defendant inside the burglarized premise. In addition, the evidence must reveal the fingerprints were not made in a legitimate manner so that felonious intent may be inferred. The evidence in *Curry* met this standard inasmuch as Curry's fingerprints were placed on the door's glass window only after it was broken, and thus the trier of fact could reasonably conclude Curry was the individual who broke the glass and entered the structure with felonious intent. 440 N.E.2d at 689–90. *See also Powell v. State* (1974), 160 Ind. App. 557, 312 N.E.2d 521 (defendant's latent fingerprint on a television inside burglarized residence) and *Paschall v. State* (1972), 152 Ind.App. 408, 283 N.E.2d 801 (defendant's fingerprint on the inside doorknob of the burglarized residence).

More recently, in *Hanks v. State* (1985), Ind., 484 N.E.2d 14, the defendant's fingerprints were found on a mirror which was

---

1. The crime of burglary is composed of the following elements: 1) breaking; 2) entering; 3) the building or structure; 4) of another person; 5) with intent to commit a felony in it. Ind.Code § 35-43-2-1 (Burns Repl.1985).

moved to gain access to items stolen from the victim's house. The defendant, an acquaintance of the victim, had visited the victim's home ten days before the burglary, but the mirror was not present at that time. On the day of the crime, the defendant again visited the victim at his home, but the two men had a conversation on the front porch and the defendant did not enter the house. In the course of conversation, the defendant told the victim he needed money. The victim later told the defendant he had to leave to run an errand, and the defendant left. The victim in turn left the house, locking the doors behind him. When he returned later in the day, he discovered his home had been burglarized. The defendant was convicted of burglary and theft and he appealed. The supreme court affirmed the convictions, finding "[t]he jury could have concluded from [defendant's] ... print on an object which clearly was handled by the burglar in order to commit the crime, coupled with his presence and familiarity with the premises, and his knowledge of the best moment to commit the crime, that ... [defendant] was guilty as charged beyond a reasonable doubt." 484 N.E.2d at 16.

Examining the facts of the present case, the print evidence does not reasonably support the inference Evans was the individual who burglarized the garage. There is no evidence the prints were recovered from the inside of the glass. There is no evidence the prints were made after the glass was broken. There is no other evidence relating to the location of the prints which reasonably supports the conclusion Evans was the individual who did the breaking and entering with a felonious intent. Further, although the victim's garage was a private building, the window side of the garage was separated from the alley by only a fence with a gate, making it relatively accessible to passerbys.

■ The evidence merely establishes Evans's presence at Nolden's garage at some undetermined time. Unlike *Curry*, the State failed to present additional evidence with reference to the fingerprint from which the trier of fact could reasonably conclude Evans was the burglar. Although Evans's conduct of entering upon Nolden's property without right constitutes the common law tort of trespass, *see Sigsbee v. Swathwood*, (1981), Ind.App., 419 N.E.2d 789, 799,[2] we decline to find proof beyond a reasonable doubt of the crime of burglary from the unauthorized presence of the defendant outside the victim's burglarized structure. Accordingly, the State did not present sufficient evidence from which the trier of fact could reasonably find Evans guilty of burglary beyond a reasonable doubt. So, too, under the facts of this case, the evidence is insufficient to support Evans's theft conviction.

■ The State was required to prove Evans: 1) knowingly or intentionally; 2) exerted control; 3) that was unauthorized; 4) over property belonging to another person; 5) with intent to deprive that person of its value or use. Ind.Code Ann. § 35-43-4-2 (Burns Repl.1985). The record is devoid of evidence Evans exerted unauthorized control over Nolden's property. It fails to establish Evans burglarized the garage and thereby gained control over the victim's property or that Nolden's missing property was recovered from or linked with Evans. Thus, the trier of fact could not reasonably find the existence of the elements of theft beyond a reasonable doubt.

Evans's convictions of theft and burglary are reversed.

SULLIVAN, J., concurs.

BUCHANAN, C.J., dissents with separate opinion.

BUCHANAN, Chief Judge, dissenting.

I must respectfully dissent. In my view, the result in this case is controlled by the recent Indiana Supreme Court decision in *Hanks v. State* (1985), Ind., 484 N.E.2d 14.

**2.** Under present Indiana law, merely entering the real property of another without consent is not criminal trespass, unless the premises are posted, denial of entry has been personally communicated, or a request to leave is made. Ind. Code Ann. § 35-43-2-2 (Burns Repl.1985).

There Justice Shepard, writing for a unanimous court, held that a defendant's fingerprint found on a mirror which was moved to gain access to stolen items in a burglarized house was sufficient evidence to sustain the defendant's convictions for burglary and theft. This was so even though the fingerprint was the *only* physical evidence connecting defendant with the crimes. The defendant had visited the victim's home about ten days before the crime, but the mirror was not then present. On the day of the crime, the defendant came to the door of the victim's house shortly before the victim left but did not enter the home. When the victim returned later in the day, the home was breached and burglarized. The court found that the fingerprint on the mirror, in conjunction with the defendant's presence near the time of the incident, was sufficient to sustain the convictions.

In the case before us, a garage belonging to Frankie Nolden (Nolden), located at Nolden's Indianapolis residence, was burglarized between 10:00 a.m. and 2:30 p.m. on October 2, 1984. Although the garage was securely locked when Nolden left, upon returning Nolden found the garage door cracked, a garage window broken, and items missing from the structure. The broken window was located on the side of the garage that faced an alley, but was separated from the alley by a fence with a gate. Pieces of broken window glass, found on the ground outside the garage, revealed a latent fingerprint which was identified as that of defendant-appellant Rodney Evans (Evans). Nolden neither knew Evans nor gave him permission to enter the garage at any time. At trial, Evans presented several witnesses whose testimony placed him in the vicinity of the Nolden garage at the time the break-in occurred.

Unlike the majority, I conclude that the facts of this case fall squarely within *Hanks.* There, the defendant was at the burglarized house shortly before the crime occurred, and the defendant's fingerprint was found inside the home. Here, Evans's own witnesses place him in the vicinity of the burglarized garage during the time in question. Moreover, Evans's fingerprint was found on broken window glass at a place where he had neither permission nor the right to be present. It is well settled that "a burglary conviction is supported by evidence of fingerprints found at the scene of a crime, intertwined with evidence supporting a reasonable inference that the prints were not made in a legitimate manner." *Curry v. State* (1982), Ind.App., 440 N.E.2d 687, 689–90. The evidence supports a reasonable inference that Evans's fingerprint, found at the scene of the crime, was not made in a legitimate manner.

The majority presents two reasons for its determination that the evidence of Evans's fingerprint does not reasonably support the inference he was the burglar. The majority first asserts that the garage was relatively accessible to the public thus making it improper to infer that Evans's print gives rise to anything other than an inference he was present on legitimate business, citing *Nichols v. State* (1973), 157 Ind.App. 605, 301 N.E.2d 246. Secondly, the majority asserts that the dearth of evidence as to which side of the window glass the print was found on or whether the print was made before or after the window was broken is fatal to the State's case.

The majority's reliance upon *Nichols* is misplaced. The facts of that case are distinguishable from those before us. The fingerprint evidence in *Nichols* was found in a place of business *held open to the public.* Here, Nolden's garage, a private structure on private property, was not a place held open to the public so that Evans's presence as established by his fingerprint was devoid of any legitimate explanation. The majority focuses on the fact that the garage was near an alley and therefore reasons that the public had access to the garage. This ignores, however, the evidence which establishes that the garage was separated from the alley by a fence with a gate. This evidence leads to a *reasonable inference* that the public did not have easy access to Nolden's garage. The trier of fact was presented with this information, and it was the trier of fact's duty to determine the weight of this evidence.

"For this Court to affirm the convictions, the circumstantial evidence against appellant need not exclude every hypothesis of his innocence. The question is whether a reasonable person could infer that, beyond a reasonable doubt, the print was made in the perpetration of the burglary and theft.

. . . .

We need not conclude, as did the *Nichols* court, that for aught that appears appellant's print was placed legitimately."

*Hanks, supra,* at 16. Unlike the factually unique *Nichols* case, a reasonable person could infer, beyond a reasonable doubt, that Evans's print was made in the perpetration of the burglary and theft.

Likewise, the lack of evidence regarding which side of the glass Evans's fingerprint was found upon is simply not relevant to the adjudication of guilt in this case. In *Curry, supra,* the defendant's fingerprints were found on both sides of the same piece of broken door glass. In that case, the inquiry into which side of the glass the print occurred upon was necessary to establish whether the print might have been legitimately placed upon the glass. Here, no reasonable inference can arise that Evans's presence, as evidenced by his fingerprint, was legitimate. The fingerprint was found in a place not open to the public, and there was no evidence that the print might have been placed legitimately at an earlier time.

Thus, I find *Hanks* to be the beacon of light leading to the conclusion that the trial court's judgment should be affirmed.